Nancy K. CARDIN, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 65A01–8811–CR–360.

Court of Appeals of Indiana,
First District.

June 20, 1989.

Rehearing Denied Aug. 16, 1989.

Glenn A. Gramp, Evansville, for appellant.

Linley E. Pearson, Atty. Gen., Lisa Anne McCoy, Deputy Atty. Gen., Indianapolis, for appellee.

ROBERTSON, Judge.

Nancy K. Cardin appeals her conviction of sixteen counts of theft, all class D felonies. The State alleged that Cardin obtained checks belonging to her employer, negotiated them, and used the funds for her own purposes, without authorization from her employer and with the intent to deprive him of the money's use or value. Cardin argues in this appeal that the trial court erred in:

(1) admitting certain exhibits;

(2) admitting evidence of admissions of guilt made by the defendant;

(3) failing to grant Cardin's Motion for Judgment on the Evidence and in entering judgments of conviction on the jury's verdict.

We affirm.

## I.

Cardin challenges the admissibility of two sets of exhibits. The State offered the first set, of which only exhibits 11–13, 23, 25, 27, 28, 33, 37, 39, 45, and 48 are relevant to this appeal, for the purpose of showing the action the Posey County National Bank took when it accepted each instrument, i.e. whether the instrument was negotiated for cash, deposited, or ex-changed partially for cash and the remainder deposited or used to pay on a debt. The trial court admitted these exhibits as a group with a limiting instruction *solely* for the purpose of showing that they constituted transactions of the Posey County National Bank.

Cardin argues the exhibits are inadmissible hearsay and not admissible as business records for essentially four reasons: the exhibits were introduced through a person who was not the custodian of business records; the exhibits are copies of checks which were not made in the ordinary course of the institution's business; the endorsements on the checks were not authenticated by anyone; and, the State did not attempt to connect the exhibits with any particular count. The State maintains the exhibits at issue were not offered to prove the truth of matters asserted therein, but to show what action the bank took with respect to each. In the alternative, if the exhibits do contain hearsay, the State argues they are admissible pursuant to the business records exception to the hearsay rule.

All of the contested exhibits appear to have been endorsed by both the victim, Dr. Ropp, and Cardin. Exhibits 11–13 are copies of checks issued by the U.S. Treasury representing the victim's social security benefits. Exhibits 23, 25, 27, 28, 33, and 39 are copies of stock dividend checks and the remaining exhibits, 37, 45 and 48 are copies of income checks from a trust account and life insurance policy. In addition to the writing on the front of the checks creating the negotiable qualities of the instruments, each contains the words "Pay Any Bank, P.E.G. The Posey County National Bank, Mt. Vernon, Indiana" and the number 71–564, all stamped inside a rectangle. These markings appear on the back of the checks with at least one other stamp of a similar nature, apparently made by some other institution within the banking system. Some of the exhibits also reveal a circular marking with the word "Teller" and a number. The bank official who sponsored these exhibits could not discern those exhibits made from Posey County National Bank records

stored on microfilm from those obtained from other sources by police officers investigating the case, but he could determine that the original instruments were processed by the Posey County National Bank.

■ The exhibits, because they contain a number of entries made at different times, pose several potential hearsay problems; yet, that which is truly objectionable hearsay evidence can be dissected. The hearsay rule excludes extrajudicial written utterances only when offered for a particular purpose, namely, as evidence of the truth of the matter asserted in the document. *Connell v. State* (1984), Ind., 470 N.E.2d 701, 705. The rule applies only to *statements of fact* which could be considered true or false, *id.*, and which derive evidentiary value because of their testimonial character. *Indianapolis Newspapers, Inc. v. Fields* (1970), 254 Ind. 219, 259 N.E.2d 651, 673–674, *cert. denied*, 400 U.S. 930, 91 S.Ct. 187, 27, L.Ed.2d 190. Imperative declarations, such as orders or instructions, which by their nature can be neither true nor false, cannot be offered for their truth. Instead, these types of utterances are generally used circumstantially to establish that an order or instruction was given. Since there is no need to cross-examine the declarant of an imperative statement other than to determine whether the statement was in fact made, these utterances ordinarily fall outside the purview of the hearsay rule. *See,* E. Imwinkelried, Evidentiary Foundations Part 1B § 1(a) (2d ed. 1989); D. Binder, Hearsay Handbook § 2.01–2.04 (2d ed. 1983); *Crawford v. Garnier* (7th Cir.1983), 719 F.2d 1317; *U.S.*

*v. Shepherd* (10th Cir.1984), 739 F.2d 510, 514. *See also Roberts v. State* (1978), 268 Ind. 348, 375 N.E.2d 215, 219 (statements in the form of questions not hearsay). On this basis, we can discern that the written utterances on the front of the checks directing the payment of funds are not hearsay.

■ Likewise, the endorsements appearing on the back side of the checks made a part of these exhibits are not objectionable because they were not offered to prove that the defendant is in fact Nancy Cardin, the matter asserted by the writing.[1]

[5] We turn then to the admissibility of the markings on the front and back of the checks which enabled the Posey County Bank official to identify the checks as instruments processed by the bank. In this case, the stamps meet the definition of hearsay. They are respectively the bank's written assertions that the instrument passed through the bank's hand, and as various witnesses explained, evince that cash was given by the bank through a particular teller, in exchange. Because the State offered the exhibits to prove that the instruments were processed by the bank and the manner in which they were processed, exactly what the marks (and with respect to the teller stamps, also, the lack of any marks) assert, the stamps are hearsay.

■ The State offered testimony from James Alsop, Vice–President of the Posey County National Bank, to show that the stamps were entries made routinely by the bank as part of its business. Cardin main-

---

**1.** Cardin argues in her brief that the State failed to establish the purported endorsements on the checks were in fact hers. While the record does not disclose that the State called a witness to identify Cardin's handwriting, the checks were properly authenticated, assuming that was necessary, by circumstantial evidence. The transcript contains the testimony of several Posey County National Bank tellers who knew Cardin personally and dealt with her when she did Dr. Ropp's banking for him. Co-employee, Jane Reynolds, testified that Cardin worked in the mornings, obtained the doctor's mail and ordinarily made his deposits for him. From a lay perspective, the numerous endorsements appear on their face to have been made by the same individual. When compared with other exhibits offered by the State which also contain Cardin's purported signature and correlate with deposit slips for her accounts at the Cynthiana State Bank, and in light of the fact that it was not unusual for Cardin to possess the doctor's checks, the evidence gives rise to the logical inference that the endorsements in Cardin's name were made by her. *Cf., Kern v. State* (1981), Ind., 426 N.E.2d 385; *Brooks v. State* (1986), Ind., 497 N.E.2d 210. We observe that in the federal courts, extrinsic evidence of the authenticity of a check is not necessary as a condition of admissibility, because commercial paper is self-authenticating. *See,* Federal Rules of Evidence, Rule 902(9).

tains that Alsop could not properly sponsor the exhibits because at the time the exhibits were offered, he was not custodian of the records and did not supervise personnel in the record-keeping departments of the bank. This court's second district addressed a contention analogous to that made by Cardin in *Baker v. Wagers* (1984), Ind.App., 472 N.E.2d 218, *trans. denied.* There, we clarified that the law did not demand by the foundational requirement of identification by the entrant or one under whose supervision the document is kept, a witness with a particular title but one with a functional understanding of the business's record-keeping process as it relates to the specific entry, transaction or declaration contained in the document. *Id.* at 221. The foundation can be established by anyone who is knowledgeable about the business's record-keeping process and can testify that the other foundational elements have been met.

Cardin argues that Alsop is unable to satisfy this prerequisite because he cannot testify that the exhibits were made in the ordinary course of the bank's business. Cardin points out that the exhibits are checks prepared by persons not employed by the bank, and that Alsop could not discern which of the copies he made from the bank's microfiche and which were prepared from outside records. Cardin's argument raises two concerns: first, the reliability of the bank's entries on the checks, i.e. whether the stamps contained on the checks are competent evidence of the processing of the checks, and second, the reliability of the exhibits themselves.

■ As we indicated earlier, our state courts have for some time, though perhaps not expressly, permitted qualified witnesses other than the custodian of records to give foundational testimony for the admission of a business record. Since the person with firsthand knowledge of the transaction intended to be recorded by the stamp is under the bank's supervision and not the check's issuer who ultimately regains possession of the document, only a representative of the bank knowledgeable about the process could explain what the stamp means and whether it was placed on the check in the course of regularly conducted business. Although Alsop's testimony demonstrates that he retains such knowledge, the State failed to elicit from him testimony establishing that the transaction stamp was affixed by the bank in the regular course of business, that it was the duty of an employee of the bank with personal knowledge of the transaction to so stamp, or that the stamp was placed on the document at or near the time of the transaction.[2] Similarly, the record shows that it was the bank's practice to record its transactions daily on microfilm, but Alsop did not explain why some transactions were recorded and others were not.

To our knowledge, this state has not adopted the approach taken by the federal courts which would permit the admission of business records based upon circumstantial evidence derived from the document itself, without the testimony of the custodian or another qualified witness. *Cf., e.g. Matter of Richter & Phillips Jewelers & Distr.* (1983), Bankr., 31 B.R. 512, 514–515, n. 1. Neither are we aware of any catch-all exception in Indiana similar to the Federal Rules of Evidence, Rule 803(24) which would allow a trial judge in the exercise of discretion to consider the inherent trustworthiness of the entry and the nature of the business which produced it. *See, e.g. Matter of Richter, id.; Federal Deposit Ins. Corp. v. Staudinger* (10th Cir.1986), 797 F.2d 908; *Karme v. C.I.R.* (9th Cir. 1982), 673 F.2d 1062; *U.S. v. Cowley* (9th Cir.1983) 720 F.2d 1037 *cert. denied* 465 U.S. 1029, 104 S.Ct. 1290, 79 L.Ed.2d 692, and compare *C.T.S. Corp. v. Schoulton* (1978), 270 Ind. 34, 383 N.E.2d 293, 295.

In addition to the foundational deficiencies previously identified, Alsop's testimony gives us no assurance that he or anyone else at the bank had personal knowledge

---

**2.** A proper foundation was laid by the State for admission of the "Teller" stamps. The State called several of the bank's tellers; all testified that each window was assigned a number which corresponded with a stamp, and that checks were stamped at the window when cash was exchanged.

that the markings displayed on the exhibits are the original or first permanent entries made by the bank with respect to each particular transaction. As Cardin points out, Alsop did not make all of the exhibits offered into evidence; he obtained some of them from police officers investigating the case. The majority of the exhibits at issue display the purported front and back of each check on a single side of paper; copies made from the bank's microfilm are two-sided. Patently, the exhibits not created from the bank's microfilm were prepared solely for purposes of litigation, rendering their trustworthiness suspect. *See, Baker v. Wagers, supra.*

█ Consequently, for the reasons set forth, we must conclude the trial court erred in admitting the contested exhibits.[3] However, even though the exhibits constituted the only documentary evidence that the checks were negotiated, and not lost or misplaced, there is testimony in the record, some elicited by Cardin, to the effect that the checks were negotiated by Cardin for the amount stated on the check and either retained by Cardin or given to the doctor's caretaker. (R. 327, 335, 348). Accordingly, the error in admitting the exhibits was harmless. *See, Gayer v. State* (1965), 247 Ind. 113, 210 N.E.2d 852, 857 (Hearsay evidence of uncontested fact necessarily harmless.)

Cardin also challenges the admissibility of the State's exhibits 53–56 as business records. Each exhibit consists of a copy of a check drawn on Dr. Ropp's personal account, made out to cash, and purportedly endorsed by the defendant. Attached to the copy of each check are copies of the bank's microfilm of the tickets reflecting how the money was allocated by Cardin to various accounts. Included within the attachments are deposit slips for Cardin's account at the Cynthiana State Bank. Exhibits 54 and 56 contain copies of checks drawn on Cardin's account and signed by Cardin. Cardin does not object to the attachments but argues again that the exhib-

its are checks created by someone other than employees of the bank and that the State failed to authenticate Cardin's endorsement. As we indicated above, the exhibits are not inadmissible hearsay simply because they are checks. Likewise, the exhibits were properly authenticated by the circumstantial evidence recited above and testimony from the doctor's nurse that Cardin had reported she had been given checks in the amounts stated on the checks. Inasmuch as Cardin has admitted she received and negotiated the checks, we find no reversible error with respect to exhibits 53–56, either.

## II.

Cardin next alleges the trial court erred in permitting testimony to the effect that Cardin admitted stealing Dr. Ropp's money, without an adequate independent showing that the crime of theft had been committed. Cardin maintained throughout the trial that Dr. Ropp had given her the money.

█ Although the State must present evidence independent of a statement against interest made by a defendant which shows that a criminal act actually occurred in order to obtain admission of a defendant's statement, the State need not make out a prima facie case as to each element of the crime charged. Neither must the State prove each element of the offense beyond a reasonable doubt before the statement may be admitted. *Douglas v. State* (1985), Ind., 481 N.E.2d 107, 110; *Fleener v. State* (1980), 274 Ind. 473, 412 N.E.2d 778, 781. Independent evidence from which an inference may be drawn that a crime has been committed is sufficient to show the corpus delicti. *Moore v. State* (1986), Ind., 498 N.E.2d 1, 4.

█ To support a theft conviction, there must be evidence that the property in question was actually stolen. However, this fact need not be proved by direct evi-

---

**3.** Cardin also argues the State did not connect any particular exhibit with a particular count but she does not explain why the failure constitutes reversible error. Each count of the indict-

ment alleges the theft of a specific amount on or about a specific date. Each of the numbered exhibits contains a check which in amount and date coincides with a count of the indictment.

dence; the corpus delicti in theft, like other facts in general, may be established by circumstantial evidence. *Rosenberg v. State* (1922), 192 Ind. 485, 134 N.E. 856, 857. While the unexplained possession by one person of the property of another is not of itself sufficient to prove theft, such fact in connection with other circumstances may be sufficient for that purpose. *Bruck v. State* (1963), 244 Ind. 466, 193 N.E.2d 491. In the present case, although the record contains no express statement by the victim, Dr. Ropp, denying that Cardin was authorized to negotiate certain of his checks and keep the proceeds for herself, the evidence exclusive of Cardin's admissions, when taken as a whole, does support an inference that her control over the funds was unauthorized and that she exerted that control with the intent of depriving Dr. Ropp of the money's value or use.

The record shows that prior to his death in February, 1987, Dr. Ropp retained his nurse of twenty-three years, Jane Reynolds, and the defendant to maintain his office and handle his business affairs. Dr. Ropp resided and was cared for at the home of his friend, Mrs. Streamer. After October, 1985, he was not ambulatory but confined to his bed, could not read and was unable to feed himself. Nevertheless, Dr. Ropp still exercised control over his business affairs. Cardin would bring the office mail to him periodically. He would rely upon her to tell him what was there and when proxies or other documents, including his annuity checks, needed an endorsement.

From the time Cardin was first employed, the office utilized a procedure to record checks received by the doctor on accounts and from various other sources. Although both employees made entries in the doctor's ledgers, Cardin worked in the morning so she would open the day's mail and record any checks received in a monthly log. The checks would be stored in the doctor's desk until a sufficient number had accumulated to warrant a deposit at the Posey County National Bank in New Harmony. Prior to October, 1985, the doctor did not direct that any of his dividend or social security checks be cashed; if he needed funds, he would write a check for

cash drawn on his personal account at a bank in Evansville. After Cardin left Dr. Ropp's employ, all of his checks were again regularly deposited with the exception of one social security check which was negotiated and the cash given to Mrs. Streamer for expenses.

The record discloses that in June, 1986, Dr. Ropp's nurse discovered that although entries had been made in the monthly log indicating that certain checks had been received, the doctor's account balance was unexpectedly low. When she reconciled the deposit slips and bank statement with the office records, Reynolds discovered that for a period beginning in about January, 1986, certain checks had not been deposited.

Earlier, Cardin had approached Reynolds with checks made out to cash, each in the amount of $10,000. Cardin reported at that time that the doctor intended to make a gift of the money to them and Mrs. Streamer, that she had discussed the matter with the doctor's attorney, and that she had been directed, for tax purposes, to make the checks out to cash. When Cardin delivered the checks to Reynolds and Mrs. Streamer, she advised them not to approach the doctor about the gift since he did not wish to be thanked. Later, when Cardin delivered a second and third check to Reynolds, Reynolds was alarmed by the generosity of the gifts ($9,000 and $8,000). Cardin advised her again not to acknowledge the gift and advised her not to speak to Mrs. Streamer about the gifts, as Mrs. Streamer would not be receiving as much in cash but would receive bearer bonds.

Upon discovering that deposits of the doctor's dividend and social security checks had not been made by Cardin, Reynolds confronted Cardin and was told the social security checks were being cashed for the doctor's expenses and that Cardin had been directed to place the cash in the doctor's nightstand. Cardin also told Reynolds that certain improvements including a new roof and screened-in porch were being made on Mrs. Streamer's house with the money from the dividend checks. Later, when Reynolds confronted Cardin a second time

about the missing funds, after having learned that Mrs. Streamer had not been receiving money for expenses, that no improvements to Mrs. Streamer's home had been made and that no money had been stored in the nightstand, Cardin recanted her earlier stories and admitted that she had taken the funds. Cardin told Reynolds the doctor had given her the money because her family was experiencing financial difficulties. She had not told Reynolds the truth initially because she was afraid Reynolds would be upset, having been a trusted friend and employee of the doctor for so long.

The record shows that both Reynolds and Mrs. Streamer are in the process of paying back to the estate the sums given them by Cardin. Dr. Ropp died before the matter came to trial; however, the record shows that the doctor's relationship with Cardin deteriorated rapidly after the others discovered that his funds were missing and that Cardin left the doctor's employ about that same time. There is no evidence in the record that the doctor ever told any of the people close to him, including his caretaker, attorney, or the other employee responsible for his funds about his intent to make the gifts.

■ Hence, exclusive of Cardin's admissions against interest, there is circumstantial evidence supporting an inference that Cardin exercised unauthorized control over funds belonging to Dr. Ropp with the intent to deprive him of the use or value of his money. In addition to possession of the missing funds, the record shows Cardin actively attempted to conceal her possession of the funds and discouraged others from discussing the matter with the one person who would know the true facts. When this evidence is considered in conjunction with the evidence that the "gifts" made to Mrs. Streamer and Ms. Reynolds are being repaid and that Cardin left the doctor's employ when the matter came to light, one can reasonably draw the inference that no gifts were intended. On this

basis, we conclude the trial court did not err in admitting the defendant's statements against interest and offers to repay.

### III.

Lastly, Cardin argues the trial court erred in denying her motion for judgment on the evidence and in entering a judgment of conviction on the jury's verdict because the evidence is insufficient to show she exercised *unauthorized* control over the sums she admittedly took.

■ Certainly, the evidence does not preclude a finding of innocence. But, where, as here, the sufficiency of circumstantial evidence is in question, the evidence need not be adequate to overcome every reasonable hypothesis of innocence. Circumstantial evidence is sufficient if an inference may reasonably be drawn from the evidence which supports the verdict. A verdict upon which reasonable persons may differ will not be set aside. *Survance v. State* (1984), Ind., 465 N.E.2d 1076, 1080.

■ As we have indicated in our discussion of the evidence with respect to the previous issue, the circumstances support an inference that Cardin's taking of the funds was unauthorized. When this evidence is coupled with the testimony offered from Dr. Ropp's nephew that Cardin admitted the theft and offered to repay the sums she appropriated, we must conclude that the jury could reasonably find Cardin guilty of theft as charged specifically in each of the sixteen counts.[4] *Cf. e.g., Hinderer v. State* (1975), 166 Ind.App. 351, 336 N.E.2d 401, *trans. denied.*

Judgment affirmed.

CONOVER, P.J., and BAKER, J., concur.

---

4. In addition to the copies of the checks, the State offered into evidence the monthly and yearly ledgers and testimony from Reynolds disclosing the amount of each check which had not been deposited and the date the checks were received.