**Paula GROUND, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 49A02–9803–CR–271.**

Court of Appeals of Indiana.

Nov. 19, 1998.

Robert V. Clutter, Indianapolis, for Appellant–Defendant.

Jeffrey A. Modisett, Attorney General, James D. Dimitri, Deputy Attorney General, Indianapolis, for Appellee–Plaintiff.

## OPINION

NAJAM, Judge.·

### STATEMENT OF THE CASE

Paula Ground appeals her convictions, following a bench trial, for Forgery, a Class C felony, and Theft, a Class D felony.

We reverse and remand.

### ISSUE

The dispositive issue presented for our review is whether the court erred when it admitted certain evidence under the business records exception to the hearsay rule.

### FACTS

In August of 1995, Ground began working part-time for Employability Services. Ground's responsibilities included opening the mail, bookkeeping and receptionist duties. As part of her job, Ground frequently wrote checks and presented them to the owner of the company, Judith Woods, for her signature. In August of 1996, Woods noticed that the bookkeeping was not current and that checks were missing from the company's check book. Woods subsequently received a bank statement which indicated that a number of unauthorized and unrecorded checks had been written on the company's account. Woods then conducted an audit and obtained microfilm copies of the checks from the bank. Twenty-two unauthorized checks had been written between May and October of 1996.

In particular, check number 4396 had been written to Paula Ground in the amount of $975.00. Woods recognized the handwriting on the payee and amount lines as Ground's, although she did not recognize the handwriting on the signature line as either Ground's or her own. Later, Detective Barbara Elmore interviewed Ground, who admitted the handwriting on the payee and amount lines on check number 4396 appeared to be her own. Detective Elmore also observed that

Ground's signature and bank account number appeared on the back of the check.

## DISCUSSION AND DECISION

Over objection,[1] the trial court admitted State's Exhibit 1, which contained certain bank records from Ground's account at National City Bank. The records consisted of a copy of Ground's signature card from her savings account and microfilm copies of a deposit slip from Ground's checking account, a "cashout" slip in the amount of $400.00, the $975.00 unauthorized check paid by Employability Services to Ground, and three checks paid to Ground from other payors. Ground argues on appeal that the records are inadmissible hearsay. The State counters that the records are admissible under Indiana Evidence Rule 803(6), the business records exception to the hearsay rule. We agree with Ground.

■■■ Our standard of review of a trial court's findings as to the essential elements of admissibility is sometimes described as an abuse of discretion. *Mullins v. State,* 646 N.E.2d 40, 51 (Ind.1995). Because the predicates or foundational requirements to admissibility often require factual determinations by the trial court, these findings are entitled to the same deference on appeal as any other factual finding, whether that is described as a clearly erroneous or abuse of discretion standard. However, the ultimate question in this case is the interpretation of the language of a rule of evidence which presents a question of law for this court. *See Stahl v. State,* 686 N.E.2d 89, 91 (Ind.1997).

Hearsay is a statement, other than one made by the declarant while testifying at trial, offered to prove the truth of the matter asserted. Ind. Evidence Rule 801(b). Hearsay is inadmissible unless admitted pursuant to a recognized exception. Ind. Evidence Rule 802. The business records exception to the hearsay rule, Evidence Rule 803(6), permits admission of records of regularly conducted business activity provided that certain requirements are met. The rule specifically provides:

A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of regularly conducted business activity, and if it was the regular practice of that business activity to make to make the memorandum, report, record, or data compilation, *all as shown by the testimony or affidavit of the custodian or other qualified witness,* unless the source of information or the method or circumstances of preparation indicate a lack of trustworthiness. The term "business" as used in this Rule includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

Ind. Evidence Rule 803(6) (emphasis added). In support of Exhibit 1, the State presented an affidavit by Michael Guio, fraud investigation manager of National City Bank, which provided:

I hereby certify that the attachments herein, namely an original carbon copy of Paula Ground's signature card and four (4) pages of microfilm copies of a deposit to the account of Paula J. Ground and attachments, are true and accurate documents kept in the ordinary course of business of National City Bank. I further swear or affirm that said signature card was signed by customer Paula Ground to open a savings account on or about April 1995 and as placed in files of National City Bank at or near the time of making until obtained by me.

I further swear or affirm that said deposit record copies and attachments were obtained by me from records kept in the ordinary course of business of National City Bank and made at or near the time of the deposit transaction on October 16, 1996.

These records have been obtained by me, Michael Guio, as Fraud Investigation Manager for National City Bank, from original and microfilmed documents and records kept in the ordinary course of business and

---

1. Specifically, Ground objected that the records were hearsay and illegible.

that I am qualified to attest to the matters herein.

Ground contends, and the State concedes, that Guio's affidavit is insufficient in two respects: First, it fails to aver that the records were transmitted by a person with personal knowledge and, second, it fails to aver that it is National City Bank's "regular practice to make" the records. Nevertheless, the State insists that the "deficiencies" are merely "technical."

█ Prior to the adoption of the Rules of Evidence, Indiana permitted a rebuttable presumption that entries in business records were made by a person who had a duty to make the record and who had personal knowledge of the event represented by the entry. *Lyons v. State,* 506 N.E.2d 813, 817 (Ind.1987). Nothing in Rule 803(6) is inconsistent with that presumption. ROBERT L. MILLER, JR., 13 INDIANA PRACTICE § 803.106B (2d ed. 1995). Absent rebuttal evidence to the contrary, it may be presumed that someone with personal knowledge prepared the challenged bank documents. Because Ground has failed to rebut that presumption, the affidavit's first deficiency does not render Exhibit 1 inadmissible.

█ No such presumption exists as to the affidavit's second deficiency. However, the State contends that "it is of no moment that the affidavit fails to state that it was the regular practice of National City Bank to make records such as Ground's records. Indeed, common sense dictates that banks regularly keep records of their customers' transactions." We cannot agree with the State's contention.

Rule 803(6) says nothing about "common sense." Typically, the records admitted under the exception are of the type one would expect to be regularly maintained by a business. Nevertheless, the rule unequivocally requires the proponent of business records to establish, by the testimony of the custodian or other qualified witness, that the records are regularly made. As we stated in *Cardin v. State,* 540 N.E.2d 51, 55 (Ind.Ct.App.1989), *trans. denied:*

> To our knowledge, this state had not adopted the approach taken by the federal courts which would permit the admission of business records based upon circumstantial evidence derived from the document itself, without the testimony of the custodian or another qualified witness.... *Neither are we aware of any catch-all exception in Indiana, similar to the Federal Rules of Evidence, Rule 803(24) [now Rule 807] which would allow a trial judge in the exercise of discretion to consider the inherent trustworthiness of the entry and the nature of the business which produced it.*

(emphasis added) (internal citations omitted).[2] Without proof that the records are regularly made, the proponent of the business records has not laid a proper foundation for the records under the plain meaning of Rule 803(6), and they are inadmissible under the hearsay rule.

The requirements of the hearsay exceptions, including Rule 803(6), are not mere technicalities as the State would contend. The State's "common sense" argument would effectively rewrite Rule 803(6) and would create a broader exception than intended by the plain meaning of the rule. The hearsay exceptions reflect the concern that hearsay evidence be admitted only when the proponent can demonstrate that the evidence bears the necessary indicia of reliability.[3] Absent such a demonstration, the hearsay rule and its underlying principles demand that the evidence be excluded. This is especially true in

---

2. Although *Cardin* was decided prior to adoption of the Indiana Rules of Evidence, there is nothing to suggest that Indiana law has changed on this point. Significantly, Indiana did not adopt a counterpart to Federal Evidence Rule 807. 13 MILLER at § 803.

3. Our supreme court has stated that:
   The reliability of business records stems from the fact that the organization depends on them to operate, from the sense that they are subject to review, audit, or internal checks, from the precision engendered by the repetition, and from the fact that the person furnishing the information has a duty to do it correctly.
   *Stahl,* 686 N.E.2d at 92. The supporting affidavit in the present case, by failing to aver that Exhibit 1 contained records regularly made by National City Bank, does not establish the reliability of the records in the manner required by the business records exception.

criminal cases, where the defendant's right to confront witnesses takes on a constitutional dimension. *See* 5 JACK B. WEINSTEIN & MARGARET A. BERGER, WEINSTEIN'S FEDERAL EVIDENCE, § 802.04[3][b] (2d ed. 1998) ("In criminal cases, the hearsay rule is suffused with constitutional hues and, therefore, applied more stringently than in civil cases.").

■ We also reject the State's assertion that Ground bears the burden of challenging the reliability of the bank's records. The burden to prove unreliability does not shift until the proponent has satisfied the requirements of Evidence Rule 803(6). If the proponent fails to establish that the evidence falls squarely within the exception, the evidence is inadmissible hearsay. The challenger bears no additional burden of persuasion except to the extent that Indiana law affords a rebuttable presumption that the records were made by a person with personal knowledge. *See* discussion, *supra*. Based on the foregoing, we conclude that the trial court erred when it admitted Exhibit 1 pursuant to the business records exception. The State failed to satisfy the exception and, thus, the exhibit contains inadmissible hearsay and should have been excluded.

■ We cannot conclude that the admission of Exhibit 1 into evidence was harmless. The improper admission of evidence is harmless error when the conviction is supported by substantial independent evidence of guilt which satisfies the reviewing court that there is no substantial likelihood that challenged evidence contributed to the conviction. *Wickizer v. State*, 626 N.E.2d 795, 800 (Ind. 1993). Reversal may be compelled if the record as a whole discloses that the erroneously admitted evidence was likely to have had a prejudicial impact on the fact-finder, thereby contributing to the judgment. *See Hardin v. State*, 611 N.E.2d 123, 132 (Ind. 1993); *see also* Ind. Trial Rule 61 (reversal not warranted unless trial error affected party's "substantial rights").

■ In this case, the State repeatedly referred to and relied upon the contents of Exhibit 1 throughout the trial. *See James v. State*, 622 N.E.2d 1303, 1309–10 (Ind.Ct.App. 1993) (erroneous admission of propensity evidence was not harmless due to State's "steady drumbeat" of references to evidence). The exhibit demonstrates Grounds' handwriting and signature and establishes that Ground uttered check number 4396 and deposited part of it into her account. Further, the exhibit provided an opportunity for the fact-finder to physically examine the check and the alleged forgery. Based on the State's repeated use of Exhibit 1 in its case-in-chief, we are not satisfied that Exhibit 1 did not impact the judgment and, thus, Ground's convictions must be reversed.

■ Principles of double jeopardy generally do not bar a retrial on the same crimes when reversal is required due to trial error in the admission of evidence. *See Thompson v. State*, 690 N.E.2d 224, 237 (Ind.1997) (citing *Lockhart v. Nelson*, 488 U.S. 33, 109 S.Ct. 285, 102 L.Ed.2d 265 (1988)). However, double jeopardy forbids a retrial if the reviewing court concludes that the evidence is legally insufficient to support the conviction. *Id.* Evidence is sufficient if the probative evidence and reasonable inferences drawn therefrom could have allowed a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt. *Wooden v. State*, 657 N.E.2d 109, 111 (Ind.1995). In this review, we do not reweigh the evidence or assess the credibility of the witnesses. *Id.*

■ Judith Woods testified at trial that Ground was responsible for Employability Services' bookkeeping, that she prepared checks to be signed by Woods and that she had access to Woods' checkbook. Woods further testified that in August of 1996, she noticed that the company's bookkeeping was not current and that several checks were missing from the checkbook. In addition, the company's bank statement indicated that twenty-two unauthorized checks had been written on the account. According to Woods, she then obtained microfilm copies of the checks from her bank and discovered that check number 4396 had been paid to Ground in the amount of $975.00 without Wood's authorization. Woods asserted that she recognized the handwriting on the amount and payee lines as Ground's, although she did not recognize the signature on the check as either her's or Ground's. Detective Barbara

Elmore also testified that she had shown the check to Ground who stated that she recognized the handwriting on the payee and amount lines as her own. In addition, Elmore testified that the back of the check bore what appeared to be Ground's signature and her checking account number.

If credited, Woods' and Elmore's testimony is sufficient to prove that Ground committed theft and forgery.[4] *See* IND.CODE §§ 35-43-4-2 (theft) and 35-43-5-2 (forgery). Thus, double jeopardy does not preclude a retrial. Grounds' convictions are reversed, and the case is remanded for a new trial.

Reversed and remanded.

FRIEDLANDER and MATTINGLY, JJ., concur.

---

4. It may seem anomalous that we are reversing Ground's convictions based on a harmless error analysis but concluding at the same time that the remaining evidence is sufficient to support her convictions. Based on the sufficiency of the evidence, one could argue that Ground was not prejudiced by the improperly admitted evidence. However, the test for harmless error serves a different function than the test for sufficiency of the evidence. "[T]he harmless error test seeks to determine the probable impact of the error on the jury, and its effect on the rights of the party. The sufficiency of the evidence test seeks to determine if substantial evidence of probative value exists from which a reasonable trier of fact could find guilt beyond a reasonable doubt." *Griffin v. State,* 664 N.E.2d 373, 377 (Ind.Ct.App.1996) (internal citations omitted).