**William J. SPEYBROECK,**
**Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 20A05–0701–CR–40.

Court of Appeals of Indiana.

Nov. 9, 2007.

Jeffrey E. Kimmell, South Bend, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Justin F. Roebel, Deputy Attorney General, Indianapolis, IN, Attorneys ·for Appellee.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

William J. Speybroeck ("William") appeals his convictions for Fraud on a Financial Institution, a Class C felony, and Identity Deception, as a Class D felony, following a jury trial. He presents two issues for our review, which we restate as follows:

1. Whether the State properly authenticated business documents pursuant to Indiana Evidence Rule 902(9).

2. Whether the trial court abused its discretion by admitting documents into evidence under Indiana Evidence Rule 803(6), the business records exception to the hearsay rule.

3. Whether a retrial is appropriate.

We reverse and ·remand for· a new trial.

### FACTS AND PROCEDURAL HISTORY

On· February 20, 2002, William purchased a Kawasaki motorcycle from Maple City Cycle ("Maple City") in Goshen. To finance the purchase, William used a Kawasaki "Good Times Credit Card" ("Kawasaki Card"). Transcript at 44. Ronnie Weatherholt, Maple City's owner, sold William·the motorcycle. In doing so, Weatherholt took William's Kawasaki Card but recorded William's name as "Bill P. Speybroeck" on the credit slip. State's Ex. 4. Weatherholt also recorded William's name as "Bill P. Speybroeck" on the bill of sale, State's Ex. 3, and on the "Certificate of Origin," Transcript at 46. On March 1, William returned to Maple City to purchase service parts for the motorcycle. William again used his Kawasaki Card, and Weatherholt filled out a credit slip recording William's name as "Bill P. Speybroeck." State's Ex. 9.

In order to obtain a Kawasaki Card, one must fill out an application either online or at the store. The applicant must submit his "name, address, social security number, birth date, place of residence, employment history, [and] ... current and past history [of] employment." Transcript at 51. Once an application is submitted, it takes one "week to two weeks" to receive the credit card. Id. at 52. A Kawasaki Card can be used to purchase Kawasaki motorcycles, parts, accessories, and service. When a Kawasaki Card is used in a transaction at Maple City, Maple City receives an electronic confirmation notification. Thereafter, HSBC Bank ("HSBC") mails Maple City a check for the amount of the transaction.

In May of 2002, William's father, Robert P. Speybroeck ("Robert"), learned that

someone had "fraudulently us[ed] [his] identity[ ] and social security number" to open a credit account with HSBC. *Id.* at 94. Robert also learned that that account had an outstanding balance.[1] On May 8, Robert sent a letter to HSBC and informed the bank of an erroneous "listing for a credit card ... [with] an outstanding balance." State's Ex. 11. Robert then spoke to an employee from HSBC's fraud department and learned that William's name was on the account. Subsequently, Robert talked to William about William's Kawasaki Card. William informed Robert that William had "found the mistake" and that it was "being taken care of." Transcript at 105. On June 5, 2002, Robert returned a form to HSBC authorizing the bank to release information to prosecuting authorities and included a copy of his driver's license. Robert had never given William permission to use his name, date of birth, or social security number to obtain the Kawasaki Card.

In 2004, St. Joseph County Police Detective Jerome Ratkiewicz initiated a fraud investigation on William, whose purchases at Maple City remained unpaid. As part of the investigation, Detective Ratkiewicz spoke to Robert to obtain Robert's social security number and date of birth. Detective Ratkiewicz also obtained information from HSBC regarding William's Kawasaki Card. HSBC sent Detective Ratkiewicz a letter that included Robert's social security number.

On October 26, 2004, the State charged William with Count I, fraud on a financial institution, a Class C felony; Count II, identity deception, as a Class D felony; and Counts III and IV, Receiving Stolen Property, each as a Class D felony. The State also alleged that William was an habitual offender. William filed a motion to sever Counts I and II from Counts III and IV, which the trial court granted.

In November of 2006, the court held a jury trial on the fraud on a financial institution and identity deception charges and the habitual offender allegation. Prior to the commencement of trial, William objected to the admissibility of State's Exhibit 11 ("Exhibit 11"). Exhibit 11 consisted of eighty-five pages, including: a notarized affidavit ("Affidavit"), entitled "Certificate of Authentication and Reliability," signed on October 23, 2006, by Stacy L. Helm, the operations manager at HSBC's fraud department; thirteen pages of computer printouts; fifty-three pages of Kawasaki documents, including the certificate of origin, credit slips, and invoices from purchases made by William using his Kawasaki Card;[2] and nine pages of letters, with attachments, written by both Robert and William and addressed to HSBC.[3] *See* State's Ex. 11; *see also* Appellant's App. at 15–99.

William objected to the "insufficiency ... of the [A]ffidavit that's being offered for authentication purposes[.]" Transcript

---

1. Robert had previously had two accounts with HSBC, but, as of 2002, he only had one account open. That account had a zero balance.

2. Two of the Kawasaki credit slips and the certificate of origin are also contained in State's Exhibits 3 through 6 and 9.

3. Exhibit 11, as contained in the Exhibit Folder, also contained three letters written by HSBC's fraud department and addressed to

the prosecutor. The State removed those three letters from Exhibit 11 and neither offered them into evidence nor showed them to the jury. However, William's attorney requested that the three letters be included in the trial court's copy of the Exhibit for purposes of the record. Six other pages of documents also were attached to Exhibit 11, including computer printout information and pre-printed forms with handwriting on them, but those pages are not at issue on appeal.

at 3. The State presented no evidence of authenticity other than the Affidavit. The Affidavit provided as follows:

I hereby certify, after being duly sworn upon my oath under penalty for perjury, that I am a custodian of the attached records consisting of ___ page(s), and that I have personal knowledge that these records are records of regularly conducted business activity made at or near the time of the occurrence of the matters set forth therein, or by or from information transmitted by a person with knowledge of the matter set forth therein; and, that these documents are kept in the normal course of the regularly conducted activity of HSBC; and, that these documents are made in the regular course of business activity as a regular practice of HSBC.

Furthermore, these records are authentic duplicate copies of official business records kept in the normal and regular course of HSBC's business, and are kept within the United States of America.

State's Ex. 11 at 1; Appellant's App. at 15.

William argued that the Affidavit was insufficient because it neither specified the number of pages nor identified the documents that the affiant was authenticating. Regarding the thirteen pages of computer printouts, William also argued those documents were not authenticated by the Affidavit because the Affidavit was dated October 23, 2006, whereas the computer printouts were attached to a letter dated October 24, 2006, and sent by Tasha Turay of HSBC's fraud department to the prosecutor.[4] William also questioned the reliability of the printouts, asserting that the

Affidavit failed to indicate what each record was, how it was compiled, and from where that information was obtained. And in regard to the fifty-three pages of Kawasaki documents, William argued that those documents were not the business records of HSBC because HSBC did not create them. Hence, William further argued that the Affidavit could not authenticate how other businesses, namely, Maple City and Kawasaki, either conducted their businesses or kept their records. Finally, regarding the letters from Robert and William to HSBC, William argued that those documents should not be admitted because HSBC did not create them in the ordinary course of its business.

The prosecutor replied to William's arguments by explaining that HSBC had initially faxed him a copy of the Affidavit and sixty-nine pages of documents—all the documents except the computer printouts—on October 23, 2006. And the following day, HSBC mailed the Affidavit along with all the documents contained in Exhibit 11, including the computer printouts. The prosecutor further argued that the letters and invoices were part of HSBC's business records because HSBC regularly kept such documents in the ordinary course of tracking the credit it provided to its customers. The prosecutor also argued that the letters from Robert and William were admissible as part of the fraud investigation on the bank's credit account, which was part of HSBC's business. After hearing the parties' arguments regarding Exhibit 11, the trial court concluded that the documents within the Exhibit were "properly covered under the [Affidavit] and [were] business records." *Id.* at 15. After holding a preliminary

---

4. Specifically, that letter provided: "Please find attached, a copy of our screen print outs [sic] showing what was entered into our system upon receipt of the Kawasaki Internet application." State's Ex. 11 at 4; Appellant's App. at 18. Again, this letter was removed from Exhibit 11 and was neither admitted into evidence nor shown to the jury. However, the computer printouts were admitted into evidence.

hearing, the court overruled William's objection.

During trial, the State moved to admit into evidence Exhibit 11, and William objected.[5] The trial court overruled William's objection and admitted Exhibit 11 into evidence. The jury found William guilty of fraud on a financial institution and identity deception as charged and found that he was an habitual offender.

The trial court sentenced William to eight years, with six years suspended, on his conviction for fraud on a financial institution. The court enhanced that sentence by eight years for the habitual offender finding. The court also ordered a concurrent term of three years on William's identity deception conviction. Thus, the trial court sentenced William to an aggregate term of sixteen years with six years suspended.[6] This appeal ensued.

## DISCUSSION AND DECISION

### Standard of Review

William argues that the trial court abused its discretion by admitting into evidence Exhibit 11. Our standard of review of a trial court's findings as to the admissibility of evidence is an abuse of discretion, *Ground v. State*, 702 N.E.2d 728, 730 (Ind. Ct.App.1998), which occurs if a trial court's decision is clearly against the logic and effect of the facts and circumstances before the court, *Rolland v. State*, 851 N.E.2d 1042, 1045 (Ind.Ct.App.2006).

■ Hearsay is generally not admissible unless it falls within one of the hearsay exceptions. *See* Ind. Evidence Rule 802. As we have recognized:

The hearsay exceptions reflect the concern that hearsay evidence be admitted only when the proponent can demonstrate that the evidence bears the necessary indicia of reliability. Absent such a demonstration, the hearsay rule and its underlying principles demand that the evidence be excluded. This is especially true in criminal cases, where the defendant's right to confront witnesses takes on a constitutional dimension.

*Ground,* 702 N.E.2d at 731–32.

■ Indiana Evidence Rule 803(6) provides such an exception for records of regularly conducted business activity provided that certain requirements are met. Specifically, Rule 803(6) provides, in pertinent part:

A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony or affidavit of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

As our Supreme Court has explained:

The reliability of business records stems from the fact that the organization depends on them to operate, from the sense that they are subject to review,

---

**5.** The transcript does not reflect William's specific objection to the admission of Exhibit 11 because it was made during a "[b]ench conference" and was "[i]naudible." Transcript at 58. Following the bench conference, the trial court stated: "For the reasons discussed earlier today, the objections [sic] overruled." *Id.*

**6.** The trial court also ordered that William's sentence be served consecutive to a federal sentence that he was serving at the time.

audit, or internal checks, from the precision engendered by the repetition, and from the fact that the person furnishing the information has a duty to do it correctly.

*Stahl v. State*, 686 N.E.2d 89, 92 (Ind. 1997). And more recently, the court stated:

> [T]he business records exception to the hearsay rule is "based on the fact that the circumstances of preparation assure the accuracy and reliability of the entries." . . .
>
> In essence, the basis for the business records exception is that reliability is assured because the maker of the record relies on the record in the ordinary course of business activities. The "regular course" of business "must find its meaning in the inherent nature of the business in question and in the methods systematically employed for the conduct of the business as a business." Thus where a company does not rely upon certain records for the performance of its functions those records are not business records within the meaning of the exception to the hearsay rule. It is not enough to qualify under the business records exception to show that the records are made regularly; rather, the court must also look to "the character of the records and their earmarks of reliability acquired from their source and origin and the nature of their compilation."

*In re Termination of Parent–Child Relationship of E.T.*, 808 N.E.2d 639, 642–43 (Ind.2004) (citations omitted). As an exception to the hearsay rule, the business record exception must be strictly construed. *See, e.g., Ground*, 702 N.E.2d at 731–32.

■ To admit business records pursuant to Rule 803(6), the proponent of the exhibit must authenticate it. *See* Evid. R. 803(6), 901. Rule 803(6) permits authentication by affidavit unless "the source of information or the method or circumstances of preparation indicate a lack of trustworthiness." Evid. R. 803(6). Similarly, Evidence Rule 902(9) permits self-authentication:

> Unless the source of information or the circumstances of preparation indicate a lack of trustworthiness, [extrinsic evidence of authenticity is not required when] the original or a duplicate of a domestic record of regularly conducted activity [is] within the scope of Rule 803(6), which the custodian thereof or another qualified person certifies under oath (i) was made at or near the time of the occurrence of the matters set forth, by or from information transmitted by[ ] a person with knowledge of those matters; (ii) is kept in the course of the regularly conducted activity[;] and (iii) was made by the regularly conducted activity as a regular practice.

"If it comports with the requirements of Rule 902(9), it is self-authenticating." *Smith v. State*, 839 N.E.2d 780, 786 (Ind. Ct.App.2005). However, self-authentication does not guarantee admissibility; rather, it "merely relieves the proponent from providing foundational testimony." *Reemer v. State*, 835 N.E.2d 1005, 1007 n. 4 (Ind.2005).

■ Once the proponent has satisfied the requirements of Rule 902(9), the burden shifts to the opposing party to prove the unreliability of the records. *See Ground*, 702 N.E.2d at 732. Thus, even if an affidavit authenticates business documents pursuant to Rule 902(9), the evidence may still be excluded. Specifically, evidence will be excluded if the source of information contained in the record or the circumstances of the record's preparation indicate a lack of trustworthiness. *See* Evid. R. 902(9); *see also* 13A Robert Lo-

well Miller, Jr., *Indiana Evidence* § 902.109 (3d ed.2007).

William challenges the admission of Exhibit 11 on two grounds. First, he contends that the Affidavit fails to properly authenticate the attached documents. Second, he asserts that, in any event, the Kawasaki documents and the letters do not satisfy the requirements of the business records exception to the hearsay rule. William also asserts that a retrial is inappropriate as the evidence against him was insufficient to support his convictions. We address each argument in turn.

### Issue One: Evidence Rule 902(9)

■ William first argues that the Affidavit fails to authenticate the attached documents. We must agree. The Affidavit neither specifies the number of pages nor identifies the documents it purports to authenticate. Rather, when the text of the Affidavit is compared with its attachments, it is apparent that the Affidavit is merely a boilerplate recitation unconnected to the underlying documents. As such, the Affidavit lacks trustworthiness and therefore does not comply with Rule 902(9). Hence, the nonauthenticated documents attached to Exhibit 11 must be excluded. *See* Evid. R. 803(6), 902(9); *see also In re Paternity of H.R.M.*, 864 N.E.2d 442, 449 (Ind.Ct. App.2007) ("The purported affidavit in this case . . . does not indicate before whom [the affiant] swore, to what she swore, that she took an oath, or that [the affiant] made

these statements under the penalty of perjury.").

■ The State's purported authentication of the computer printouts demonstrates the Affidavit's lack of trustworthiness. The Affidavit was signed and dated October 23, 2006, but the computer printouts were not created until October 24, 2006. And when HSBC first submitted the Exhibit 11 documents to the State, HSBC did not include the computer printouts. Thus, because the Affidavit is predated, does not specify the number of pages included, and does not identify the documents it purports to authenticate, the State's contention that there is "a strong implication" that the affiant reviewed the computer printouts is without merit. *See* Appellee's Brief at 11.[7] Accordingly, we hold that the Affidavit is insufficient to authenticate the Exhibit 11 documents under Rule 902(9).

### Issue Two: Evidence Rule 803(6)

We also hold, under Rule 803(6), that the Affidavit cannot cure the unreliability inherent in HSBC's submission of the Kawasaki documents and the letters.[8] In order for business records to be found reliable under Rule 803(6), the person recording the information must do so in the regular course of business and must have personal knowledge of the information recorded. *See Stahl*, 686 N.E.2d at 92. For example, in *Stahl* the trial court admitted

---

7. Insofar as the State argues that the October 24 letter it received with the computer printouts "served the same function as a supporting affidavit," we note that that letter was not signed under penalty of perjury. *See* Appellee's Brief at 11; State's Ex. 11 at 4. It therefore cannot be the functional equivalent of an authenticating affidavit. *See* Evid. R. 902(9); *Jordan v. Deery*, 609 ·N.E.2d 1104, 1110 (Ind.1993) ("The chief test of the sufficiency of an affidavit is its ability to serve as a predicate for a perjury prosecution.").

8. Although we hold that each of the Exhibit 11 documents is inadmissible under Rule 902(9), we also address the admissibility of the Kawasaki documents and the letters under Rule 803(6) because that issue is likely to recur on remand. Again, the Kawasaki documents and the letters were included in HSBC's first submission of the Exhibit 11 documents to the State. William does not challenge the admission of the computer printouts under Rule 803(6).

into evidence an affidavit completed by a bank's customer pursuant to a fraud investigation by the bank. *Id.* at 91. In reviewing the admissibility of that document under Rule 803(6), our Supreme Court held that "because [the bank's employee] did not have personal knowledge of the information in the affidavit, and [the customer] was not acting in any regularly conducted business activity, the requirements of Rule 803(6) were not met." *Id.* at 92. Thus, the document was not admissible because the employee did not have personal knowledge of the matters set forth in the document and because the customer was not acting in the course of the bank's regularly conducted business activity. This court reached the same result in *Wilson v. Jenga Corp.*, 490 N.E.2d 375, 377 (Ind.Ct.App.1986), in which we held that a business could not lay the proper foundation to admit the records of another business because the requesting business lacked the personal knowledge required to ensure reliability.[9]

■ Likewise, here neither the Kawasaki documents nor the letters satisfy Rule 803(6)'s requirements of reliability. Specifically, notwithstanding the Affidavit's recitation that "these documents are made in the regular course of business activity as a regular practice of HSBC," none of those documents were created by an HSBC employee with personal knowledge of the matters set forth in the documents. *See* Appellant's App. at 15. Nor were Maple City, Kawasaki, Robert, or William acting in the course of HSBC's regularly conducted business activity when they created those documents. The State does not refute William's contention that HSBC lacked personal knowledge of the alleged

transactions between William, Maple City, and Kawasaki. The State also does not dispute William's argument that none of those entities acted in the course of HSBC's regularly conducted business activity. Instead, the State responds that it was only required to show that the documents at issue were "kept in the routine course of business and placed in the record by one authorized to do so, not one who had personal knowledge of the transaction represented at the time of the entry." Appellee's Brief at 10.

■ In support of its position, the State cites *Darnell v. State*, 435 N.E.2d 250, 253 (Ind.1982), in which our Supreme Court held:

> The business records' exception to the hearsay rule does not require that a sponsor of an exhibit must have personally made it, filed it, or have had firsthand knowledge of the transaction represented by it. The record keeper must only show that it is part of the records kept in the routine course of business and placed in the record by one authorized to do so, who had personal knowledge of the . transaction represented at the time of the entry.

But the State misapplies *Darnell* to William's argument. William does not allege that the affiant to Exhibit 11 was required to have personal knowledge. Rather, he argues, correctly, that someone at HSBC was required to have personal knowledge of the information contained in the Kawasaki documents and the letters. *See Stahl*, 686 N.E.2d at 92; *Wilson*, 490 N.E.2d at 377. Again, "where a company does not rely upon certain records for the performance of its functions those records are not business records within the meaning of the

---

9. Although *Wilson* was decided under the common law of hearsay, our Supreme Court has recognized that, "[w]ith few exceptions, Evidence Rule 803(6) is generally consistent with longstanding Indiana precedent on the admissibility of business records." *E.T.*, 808 N.E.2d at 642.

exception to the hearsay rule." *E.T.*, 808 N.E.2d at 643. William has met his burden in showing that no one at HSBC had the personal knowledge required for the business records exception to apply. Hence, those documents cannot satisfy Rule 803(6)'s requirements of reliability. *See Stahl*, 686 N.E.2d at 92; *see also Serrano v. State*, 808 N.E.2d 724, 727 (Ind. Ct.App.2004) (holding that an arrest record was inadmissible where there was no evidence that the officer who prepared the arrest report had personal knowledge of the information contained therein), *disapproved of on other grounds by Jaramillo v. State*, 823 N.E.2d 1187 (Ind.2005), *cert. denied*, 546 U.S. 1030, 126 S.Ct. 730, 163 L.Ed.2d 568 (2005); *D.W.S. v. L.D.S.*, 654 N.E.2d 1170, 1173 (Ind.Ct.App.1995) (holding that a report of an event recorded must have been within the personal knowledge of someone acting in the course of regularly conducted business activity).

### Issue Three: Retrial

■ Although the trial court erred in the admission of Exhibit 11, we will affirm William's convictions if that error was harmless. The improper admission of evidence is harmless only when the conviction is supported by substantial independent evidence of guilt that satisfies the reviewing court that there is no substantial likelihood that challenged evidence contributed to the conviction. *Ground*, 702 N.E.2d at 732. Reversal may be compelled if the record as a whole discloses that the erroneously admitted evidence was likely to have had a prejudicial impact on the fact finder, thereby contributing to the judgment. *Id.* In *Ground*, we reversed the defendant's convictions when the State repeatedly referred to erroneously admitted evidence that likely had a prejudicial impact on the fact-finder. *Id.* And in *James v. State*, 622 N.E.2d 1303, 1309–10 (Ind.Ct.App.1993), we held that the erroneous admission of propensity evidence was not harmless due to State's "steady drumbeat" of references to the evidence.

■ Here, the admission of Exhibit 11 was not harmless error. The State repeatedly referred to and relied upon the contents of Exhibit 11 throughout the trial. In the prosecutor's closing argument, he repeatedly referred the jury to the documents in Exhibit 11 as evidence that satisfied the elements of the charges of fraud on a financial institution and identity deception. Again, Exhibit 11 shows William's actual social security number and middle initial as well as the social security number, date of birth, and middle initial that William apparently used to open the Kawasaki Card. Exhibit 11 also reveals William's multiple uses of the Kawasaki Card and shows his signature on each purchase. Based on the State's repeated use of Exhibit 11, we must conclude that Exhibit 11 impacted the judgment. Thus, William's convictions must be reversed.

■ Principles of double jeopardy generally do not bar a retrial on the same crimes when reversal is required due to trial error in the admission of evidence. *Ground*, 702 N.E.2d at 732. If all the evidence, even that erroneously admitted, is sufficient to support the jury verdict, double jeopardy does not bar a retrial on the same charge. *Stahl*, 686 N.E.2d at 94; *see also Jaramillo*, 823 N.E.2d at 1190 n. 5. Evidence is sufficient if the probative evidence and reasonable inferences drawn therefrom could have allowed a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt. *Ground*, 702 N.E.2d at 732. In this review, we do not reweigh the evidence or assess the credibility of the witnesses. *Id.*

■ The State presented evidence to support the inference that William used

Robert's identifying information, without Robert's consent, to obtain the Kawasaki Card from HSBC and then purchase a motorcycle and accessories. Considering all the evidence presented at trial, including the improperly admitted Exhibit 11, we conclude that there was sufficient evidence from which the jury could have concluded that William committed fraud on a financial institution and identity deception. Accordingly, we remand this case for a new trial.

### Conclusion

In sum, the circumstances associated with the preparation of the Affidavit and Exhibit 11 indicate a lack of trustworthiness. As such, the Affidavit fails to satisfy Rule 902(9)'s requirements for self-authentication, and the underlying documents must be excluded. In addition, the Kawasaki documents and the letters cannot satisfy Rule 803(6)'s requirements of reliability. No one at HSBC had personal knowledge of the creation of those documents, and HSBC made none of those documents in its regular course of business. Thus, we hold that the trial court abused its discretion when it admitted Exhibit 11 into evidence. But because all the evidence presented at William's trial, even that erroneously admitted, is sufficient to support the jury verdict, double jeopardy does not bar a retrial on the same charges.

Reversed and remanded for a new trial.

MATHIAS, J., and BRADFORD, J., concur.