**Tammy WILKE, Defendant-Appellant,**

**v.**

**STATE of Indiana, Plaintiff-Appellee.**

**No. 1–1085A258.**

Court of Appeals of Indiana,
First District.

Aug. 20, 1986.

Robert Canada, Evansville, for defendant-appellant.

Linley E. Pearson, Atty. Gen., Joseph N. Stevenson, Deputy Atty. Gen., Indianapolis, for plaintiff-appellee.

RATLIFF, Judge.

## STATEMENT OF THE CASE

Tammy Wilke appeals from the trial court's judgment convicting her of perjury as a class A misdemeanor. We affirm.

## FACTS

Viewing the evidence in the light most favorable to support the verdict, on August 19, 1984, Tammy Wilke and Jack Darnell initiated a drug transaction. Wilke was attempting to sell amphetamines to Darnell for $150. According to the evidence at trial, Darnell gave Wilke $150 in cash in exchange for one and a half grams of the drug. Darnell then grabbed the cash out of her hands and fled from the scene. Wilke notified the police immediately that Darnell stole $150 in cash from her. Conversely, Darnell claimed that only drugs were involved. In a sworn statement to the police on August 21, 1984, Wilke answered "no" when asked whether drugs were involved in the robbery. Rather, she asserted that Darnell forcibly took the money from her. She made this statement despite the investigating officer's admonition about perjury. In another sworn statement nineteen minutes later, she admitted that drugs were involved in the alleged robbery. She told the police that she lied in her first statement to avoid prosecution as a drug dealer. She was subsequently prosecuted for perjury.

At the trial, the investigating police officer testified that, in his opinion, neither the police department nor the prosecutor pursued thefts or robberies in drug transactions. This policy was based on two reasons. First, drug-related robberies or thefts are difficult to prosecute since the witness-victim is an admitted drug dealer. Second, such victims are not looked upon as worthy of the law's protection. Thus, the police would have pursued its investigation based on Wilke's first sworn statement that drugs were not involved. However, when Wilke admitted that drugs were involved in the robbery, the police ceased the inquiry.

After a jury trial, the trial court found Wilke guilty of perjury, a class D felony. The court entered judgment against her for perjury as a class A misdemeanor and sentenced her to one year on probation. From this judgment, Wilke appeals.

## ISSUES

1. Did the trial court err, as a matter of law, in concluding that the appellant's false statement was material?

2. Did the trial court err in permitting the State to use the investigating police officer's opinion as to the police department's policy regarding drug-related rob-

beries, thus denying the appellant a fair trial?

3. Is the "Exculpatory No" doctrine applicable?

## DISCUSSION AND DECISION

*Issue One*

Wilke argues that the trial court erred in holding her statement material to the finding of perjury. We disagree. Perjury is defined by Indiana Code section 35–44–2–1. In pertinent part it reads:

"(a) A person who:

(1) Makes a false, material statement under oath or affirmation, knowing the statement to be false or not believing it to be true; ... commits perjury, a class D felony."

The appellant concedes all elements of perjury except materiality. The issue of materiality is an issue for the court to decide as a matter of law. *Richardson v. State* (1971), 255 Ind. 655, 657, 266 N.E.2d 51, 52. *Cf. United States v. Wesson* (7th Cir.1973), 478 F.2d 1180, 1181 (federal crime of perjury).

In the context of perjury, Indiana courts define materiality to mean that which is reasonably calculated to mislead an investigation. *Zordani v. State of Indiana* (1978), 175 Ind.App. 297, 300, 371 N.E.2d 396, 399, *trans. denied.* The federal courts hold that a false statement is material if it "has the natural effect or tendency to impede, influence or dissuade the grand jury from pursuing its investigation." *United States v. Howard* (7th Cir.1977), 560 F.2d 281, 284. Since a grand jury investigation closely resembles a police inquiry, the same test should be applied to both. The State is not required to prove actual impairment of the investigation. "Mere potential influence with a line of inquiry is sufficient to establish materiality." *United States v. McComb* (7th Cir. 1984), 744 F.2d 555, 563. *See also Howard,* 560 F.2d at 284.

■ When Tammy Wilke answered "no" to the question of whether drugs were involved in the robbery, she potentially, if not actually, interfered with the police department's investigation. First, Wilke was attempting to avoid an investigation into her own drug transactions. If she had told the truth immediately, the police would have commenced an investigation into her affairs as well as those of Darnell. Her false statement thus interfered with the police investigation. Second, Wilke's false statement potentially influenced the inquiry since the police would not have investigated the robbery had they known about the drugs. With Wilke's false statement, the police mistakenly were prepared to investigate further Darnell's alleged robbery of Wilke. For these two reasons, Wilke's false statement was material since it potentially influenced the police inquiry.

*Issue Two*

Wilke argues that she did not receive a fair trial because of the investigating officer's testimony about the police department's policy on pursuing drug-related robberies. We disagree.

A conviction must be set aside if the prosecution used false testimony and there is a reasonable likelihood that the testimony could have affected the jury's judgment. *Carey v. State* (1981), 275 Ind. 321, 329, 416 N.E.2d 1252, 1257. To constitute reversible error, the testimony must be false.

■ At the trial, the police officer testified that the police department and prosecutor did not pursue robberies involving drugs. His statement did not represent the official policy of his department or the prosecutor's office. He simply testified truthfully as to what he believed the policy to be. Despite the rare case when the department or prosecutor did pursue a drug related robbery or theft, the police officer's testimony was truthful based on his experiences. Thus, the trial court's refusal to exclude the police officer's testimony was correct.

*Issue Three*

In Wilke's first sworn statement on August 21, 1984, the following discussion took place between Wilke and a police detective:

"Q. Was [sic] there any drugs of any kind including marijuana, crank, cocaine, any kind of illegal drugs whatsoever involved in this robbery?

"A. No.

"Q. The only thing that was involved was $150.00 in cash, is that correct?

"A. Correct."

Record at 80. Wilke claims that her simple denials fall under the "exculpatory no" exception. Since she did not raise this issue until addressing it in her amended appellant's brief, we will not reverse unless fundamental error occurred. *Ingram v. State* (1984), Ind.App., 463 N.E.2d 483. Our supreme court has said that to constitute fundamental error, "the error must constitute a clearly blatant violation of basic and elementary principles, and the harm or potential for harm therefrom must be substantial and appear clearly and prospectively." *Reynolds v. State* (1984), Ind., 460 N.E.2d 506, 508. We do not find any such error.

The federal courts have almost unanimously accepted the "exculpatory no" doctrine as a defense to the following statutory offense:

"Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than five years, or both."

18 U.S.C. § 1001. The thrust of this theory is that if a person answers with a simple denial in response to an investigator's question which would yield an incriminating answer if answered truthfully, the person cannot be convicted under § 1001. Nearly all United States Courts of Appeal have accepted the "exculpatory no" doctrine. *United States v. Van Horn* (11th Cir.1986), 789 F.2d 1492; *United States v. Rowland* (5th Cir.1986), 789 F.2d 1169; *United States v. Cole* (4th Cir.1980), 622 F.2d 98, cert. denied, 449 U.S. 956, 101 S.Ct. 363, 66 L.Ed.2d 221; *United States v. Fitzgibbon* (10th Cir.1980), 619 F.2d 874; *United States v. King* (7th Cir.1980), 613 F.2d 670; *United States v. Chevoor* (1st Cir.1976), 526 F.2d 178, cert. denied, 425 U.S. 935, 96 S.Ct. 1665, 48 L.Ed.2d 176; cf. *United States v. Capo* (2d Cir.1986), 791 F.2d 1054. Contra *United States v. Gonzalez-Mares* (9th Cir.1985), 752 F.2d 1485. The doctrine initially was developed under the rationale that Congress did not intend that such statements were to be included within § 1001. *Paternostro v. United States* (5th Cir.1962), 311 F.2d 298. Today, the prevailing rationale is that application of § 1001 to a simple denial would violate an individual's right against self-incrimination guaranteed by the Fifth Amendment of the United States Constitution. *United States v. Tabor* (11th Cir.1986), 788 F.2d 714, 717; *United States v. Lambert* (5th Cir.1974), 501 F.2d 943, 946, n. 4 (en banc).

The "exculpatory no" doctrine, however, is not without limitations. The federal courts generally have limited the "exculpatory no" exception to simple denials to incriminating questions. If the person makes any kind of affirmative, voluntary representations, the doctrine is inapplicable to reverse a § 1001 conviction. *Capo*, at 1069. Also, the defendant may invoke the defense only if self-incrimination is involved. If the defendant's truthful answer would not have been incriminating, a § 1001 conviction cannot be reversed. *United States v. Payne* (11th Cir.1985), 750 F.2d 844. Furthermore, the doctrine is applicable only in situations resembling a criminal investigation. If the questioning is part of an administrative function, the "exculpatory no" defense fails. *Fitzgibbon*, at 880. Thus, federal courts have narrowly construed the "exculpatory no" doctrine.

At this time, we decline to adopt the "exculpatory no" doctrine as a defense to Ind.Code § 35-44-2-1 for two reasons. First, federal courts have not adequately

explained the absence of the "exculpatory no" defense to convictions under 18 U.S.C. § 1621, the federal perjury statute.[1] *E.g. Cole*, at 99–100.

■ The second reason for our refusal to adopt the "exculpatory no" doctrine concerns the inappropriate factual posture of the case under consideration. It is true that Tammy Wilke simply answered "no" when asked by the detective whether drugs were involved in the alleged robbery. However, Wilke, not the police, initiated the investigation. The police did not confront her first and ask her questions concerning her drug dealing. Instead, she came to the police with information incriminating Jack Darnell in a robbery involving only cash in which she was the victim. The federal cases involve situations where investigative officers initiate the questioning or the investigation. *E.g. Paternostro*, at 305 ("exculpatory no" responses "during a question and answer conference, *not initiated by the [defendant]*") (emphasis added). Thus, the "exculpatory no" doctrine is inapplicable to Wilke since she, not the police, initiated the investigation. In such a situation, it would be unreasonable to allow a person to accuse another of a crime and then hide behind the "exculpatory no" doctrine when charged with perjury for making exculpatory denials in response to questions concerning the accuser's personal involvement in the crime in question. *Cf. Van Horn*, at 1510 ("exculpatory no" does not apply when person attempts to mislead an investigation). Since the case at bar does not present a factual situation which is congruous with the facts of the federal cases, we choose to delay a decision on the propriety of adopting the "exculpa-

tory no" doctrine until we are faced with a case which fits within the doctrine's traditional framework. We therefore reject the appellant's argument based on the "exculpatory no" theory. No fundamental error occurred.

Affirmed.

ROBERTSON, P.J. and NEAL, J., concur.

---

1. "Whoever—

   (1) having taken an oath before a competent tribunal, officer, or person, in any case in which a law of the United States authorizes an oath to be administered, that he will testify, declare, depose, or certify truly, or that any written testimony, declaration, deposition, or certificate by him subscribed, is true, willfully and contrary to such oath states or subscribes any material matter which he does not believe to be true; or

   (2) in any declaration, certificate, verification, or statement under penalty of perjury as

permitted under section 1746 of title 28, United States Code [28 U.S.C.S. § 1746], willfully subscribes as true any material matter which he does not believe to be true;

is guilty of perjury and shall, except as otherwise expressly provided by law, be fined not more than $2,000 or imprisoned not more than five years, or both. This section is applicable whether the statement or subscription is made within or without the United States."
18 U.S.C. § 1621.