**Gary L. DANIELS, Appellant–Defendant,**

**v.**

**STATE of Indiana, Appellee–Plaintiff.**

No. 45A04–9403–CR–99.

Court of Appeals of Indiana.

Nov. 29, 1995.

Mark A. Bates, Appellate Public Defender, Crown Point, for Appellant.

Pamela Carter, Attorney General, Lisa M. Paunicka, Deputy Attorney General, Indianapolis, for Appellee.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Defendant–Appellant Gary L. Daniels (Daniels) appeals from his conviction of perjury, a Class D felony[1].

We affirm.

1. IND.CODE 35–44–2–1(a)(1) (1993).

### ISSUE

Daniels presents the following re-stated issue for our review: Whether the State presented sufficient evidence to sustain his conviction for perjury.

### FACTS AND PROCEDURAL HISTORY

The evidence most favorable to the verdict reveals that at approximately 1:00 a.m. on December 7, 1989, Darryl Pinkins, William Durden and Roosevelt Glenn were in a 1973 Pontiac Catalina owned by Daniels. The three men followed the car driven by Jill Martin, and purposefully "bumped" into it. When Martin's car stopped, the men pulled up behind her and began to approach her car. At that moment, a truck pulled off the road and the three men fled in the Pontiac.

Approximately one-half hour later, Mary Jo Budack, the victim, was driving her car home from a friend's house. The three men followed her closely and eventually "bumped" her car. When Budack got out of her car to assess the damage, she was abducted by the three men. She was subsequently raped, sodomized and robbed by the three men. During the attack, Budack was given a pair of work-coveralls to cover her eyes. After the attack, she returned to her car with the coveralls.

Budack reported the attack to the police and described the vehicle. Martin also gave a detailed description of the vehicle used to "bump" her car. An investigation was conducted whereby the identification of the car and the coveralls lead to Daniels. Daniels was originally charged, along with Pinkins, Durden, Glenn and a fifth individual with criminal deviate conduct, and the rape and robbery of Budack. Following the receipt of DNA testing results, the charges against Daniels were dropped. Pinkins was ultimately convicted of rape, criminal deviate conduct and robbery. The present perjury charge against Daniels arose from his testimony in the rape trial of Darryl Pinkins.

Daniels was charged by information with one count of perjury as a Class D felony and

one count of assisting a criminal as a Class C felony. Following a trial by jury, he was found guilty only of the perjury charge. He now appeals.

## DISCUSSION AND DECISION

Before reaching the merits of this appeal, we recite the well-settled standard by which we review sufficiency of the evidence claims. We neither reweigh the evidence nor judge the credibility of the witnesses. We consider only the evidence most favorable to the verdict, and all reasonable inferences drawn therefrom. Where the evidence is in conflict, we are bound to view only that evidence which is most favorable to the trial court's judgment. If there is substantial evidence to support the verdict beyond a reasonable doubt, we must affirm. *Vickers v. State* (1995), Ind.App., 653 N.E.2d 110, 113.

Daniels argues that the evidence is insufficient to support his conviction of perjury because the State failed to prove that his statements were false or that they were material to an issue in Pinkins's rape trial.

■ A person commits the crime of perjury when he "makes a false, material statement under oath or affirmation, knowing the statement to be false or not believing it to be true." I.C. 35-44-2-1(a)(1). In order to support a conviction for perjury, the State must present sufficient evidence to show that the defendant (1) made a false statement under oath (2) which statement was material to a point in the case. *See Porter v. State* (1965), 246 Ind. 701, 210 N.E.2d 657, 661–62. It is well-settled that confusion or inconsistency alone is not enough to prove perjury. *Dunnuck v. State* (1994), Ind.App., 644 N.E.2d 1275, 1280, *trans. denied; Fadell v. State* (1983), Ind.App., 450 N.E.2d 109, 114. Furthermore, in a charge for perjury, the questions and answers in a sworn statement must be interpreted in their context. *Griepenstroh v. State* (1994), Ind.App., 629 N.E.2d 887, 890, *trans. denied* (ambiguous statements by defendant precluded finding that he knowingly made false statements). Materiality has been defined as that which is reasonably calculated to mislead an investigation. *Wilke v. State* (1986), Ind.App., 496 N.E.2d 616, 618; *State v. Fields* (1988), Ind. App., 527 N.E.2d 218, 220.

■ The facts reveal that Daniels testified as a witness in the rape trial of *State of Indiana v. Darryl Pinkins*, Cause No. 45G01–CF–00005, in the Lake Superior Court. The information alleged that, while under oath, Daniels gave the following testimony which he knew to be false:

1. That between 10:30 p.m. on December 6, 1989 and 7:00 a.m. on December 7, 1989, a time which includes the time of the offenses charged in [State v. Pinkins], his automobile, a 1973 light green Pontiac, was parked on the street near his residence;

2. That with the exception of lending his automobile to ROOSEVELT BOOKER one (1) time in 1986, he has never lent his automobile to DARRYL PINKINS, ROOSEVELT GLENN, or anyone else;

3. That the two (2) witnesses, MARY JO WIMMER [BUDACK] and JILL MARTIN, who positively identified his automobile as the automobile used in the bumping of JILL MARTIN'S automobile and the forcible abduction, rape, and robbery of MARY JO WIMMER on December 7, 1989 between approximately 1:00 a.m. and 4:00 a.m., were either wrong or liars;

4. That on January 3, 1990, he participated in a line-up at the Lake County Police Department in Crown Point, Indiana and saw Det. Lt. Michael Solan present; and

5. That he kept his automobile clean, washing and waxing it once a week.

(R. 6–7; 33–34). Following a trial by jury, Daniels was found guilty of perjury, based on statements four and five above. (*See* R. at 136).

Daniels gave the following testimony at Pinkins's trial regarding the condition in which he kept his car:

Q. Now, we have some question here about what kind of condition—do you clean your car? It looks kind of dusty to me. In what kind of condition did you keep that car?

A. Clean.

Q. Why on a 1973 Pontiac.

A. Because that's me. I keep myself clean, my automobile clean, I keep my house clean.

Q. And you kept a beater like that clean?

A. Yes.

Q. And how often would you clean that thing?

A. If it's rain, it washed it.

Q. Doesn't look like you polished it.

A. I polished it.

Q. So you polished this thing, not just cleaned it?

A. Yes, I cleaned it.

Q. How often did you wash that car?

A. Once a week.

Q. Wax?

A. Wax.

BY THE DEPUTY PROSECUTOR:

I'm sorry, I couldn't hear the last part and I can't see the witness.

BY THE COURT:

Washed the car once a week and waxed it once a week.

(Pinkins Record at 2602–03). On cross-examination, the State elicited the following testimony from Daniels:

Q. [Your] automobile has been positively identified by two young ladies in this case. You're saying that they're wrong or they're liars, is that correct, sir?

A. They got to be.

(Pinkins Record at 2662).

When questioned regarding the lineup conducted on January 3, 1990, at Crown Point, Daniels gave the following testimony:

Q. Were other people [at the lineup]?

A. Mr. Solan was there.

Q. Where was Mr. Solan?

A. He was in, you know, the windows with the lineup.

Q. Well, you can't see through walls, can you?

A. No, but he went in after he went through the door.

Q. You saw Detective Solan.

A. Michael Solan.

Q. On the 3rd day of January—

A. Right.

Q. —1990 at a lineup that you were subjected to?

A. Right.

Q. Well, what would you say if I told you that he says he wasn't there?

A. He's lying.

Q. If he had no idea that there was a lineup?

A. He's lying.

Q. God as your witness, you saw Solan at this lineup?

A. He was there.

(Pinkins Record at 2620–21).

Q. Are you positive you saw Detective Solan [at the lineup]?

A. Yes, I did.

Q. What was he doing?

A. Well, he was just standing there. You know, after we came down, he was standing there, you know, to the door. The door right here, he was standing right there (indicating), you know, just standing watching us go in, and after then, I don't know where he went, if he stayed there or not.

(Pinkins Record at 2631–32). Officer Solan testified that he was not present at the lineup and his testimony was corroborated.

The evidence adduced at Darryl Pinkins's rape trial revealed that the victim, Mary Jo Budack, was forcibly abducted, raped, sodomized and robbed by several African-American men. The identity of the automobile used to commit the crimes was a pivotal issue at trial. Budack and Martin positively identified Daniels's 1973 Pontiac as the vehicle used in the crime against Budack and the "bumping" of Martin's car. Both victims identified the car as an American-made, four-door, light green sedan covered with mill-dust or dirty.

Based on information obtained from Martin and Budack, Officer Solan compiled a list of characteristics for the car used in the attack. The only car that fit all of these characteristics was the 1973 Pontiac Catalina. Officer Solan interviewed all 23 owners of Pontiac Catalinas in Lake and Porter counties. Daniels's Pontiac Catalina was the only

one that had cloth diamond-patterned seats, as described by Budack, and was driven to the mills every day.

During his investigation, Officer Solan was also able to trace the coveralls used to shield the victim's face to Luria Brothers, a scrap metal processing plant located within Bethlehem Steel. Daniels was employed with a janitorial service which cleaned the offices at Luria Brothers; Pinkins and the others charged in Budack's attack were employed at Luria Brothers. A plant manager at Luria Brothers testified that Daniels drove his 1973 Pontiac Catalina to work every day and that the car was dirty. The day after Officer Solan visited the Luria Brothers' offices, Daniels stopped driving his car to work. The car was eventually found hidden in Daniels's girlfriend's garage.

The State presented sufficient evidence to prove that Daniels gave false testimony in an effort to help Pinkins avoid conviction for his crimes of December 7, 1989. Daniels made knowing, false statements in an effort to persuade the jury that his car was not used to commit the crimes. Daniels's statements to the jury that Lt. Mike Solan was present during the lineup at the Lake County Jail and that his car was always clean and waxed were made in an effort to damage the credibility of Officer Solan and the victims and to defeat a just verdict.

### CONCLUSION

In sum, Daniels made false statements at the rape trial of Darryl Pinkins. These statements were material because they undermined the credibility of Martin, Budack and Officer Solan.

Accordingly, Daniels's conviction for perjury is affirmed.

CHEZEM and BAKER, JJ., concur.