## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

May 24 2016, 9:40 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Stacy R. Uliana
Bargersville, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Ian McLean
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Brett Conover,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

May 24, 2016

Court of Appeals Case No.
73A01-1506-CR-513

Appeal from the Shelby Superior
Court

The Honorable Barbara
Harcourt, Senior Judge

Trial Court Cause No.
73D01-1406-FD-195

**Robb, Judge.**

## Case Summary and Issues

[1] Following a bench trial, Brett Conover was convicted of perjury, a Class D felony. Conover appeals, raising four issues for our review, two of which we find dispositive: (1) whether the admission of certain hearsay testimony constituted fundamental error; and (2) whether the evidence is sufficient to support his conviction for perjury. Concluding the evidence is insufficient because the admission of hearsay testimony constituted fundamental error, we reverse and remand.

## Facts and Procedural History

[2] On April 26, 2012, Capital One Bank ("Capital One") filed a small claims action against Conover to recover an unpaid credit card balance of $1,094.07. The account ending in 8928 was in Conover's name and referenced his address, date of birth, and Social Security number, yet he disclaimed responsibility for the account. Conover defended the small claims action pro se and was the only witness who testified at a trial held on October 22, 2012. Although the account statements had been sent to Conover's address for several years, and payments had been made on the account every month from November 2008 to February 2011, Conover claimed he "never had an account with Capital One" and "never had any dealings with Capital One in [his] life." State's Ex. 1 at 5, 7. Conover maintained he "never used a Capital One card" and denied making any of the purchases charged to the account. *Id.* at 10. The small claims court admitted the billing records over Conover's objection but noted "if we were in

regular court I think you would be . . . in a world of hurt as far as hearsay . . . ." *Id.* at 18; *see also* Ind. Small Claims Rule 8(A) (stating small claims proceedings shall not be bound by the rules of evidence except provisions relating to privileged communications and offers of compromise).

[3]    The small claims court suspected a member of Conover's household was responsible for the charges:

> [Court:]       Who lives with you during this period of time? Who lived with you?
>
> [Conover:]   My son lives with me now.
>
> [Court:]       No, that wasn't my question.  Not now, during this period of time when this credit card was out there . . . .
>
> [Conover:]   Well, probably my ex-wife and my son.
>
> [Court:]       What were their names?
>
> [Conover:]   Tracy Conover and my son's name is Chris. . . .
>
> [Court:]       If it turns out that Chris was doing this, had stolen your identity, did he have your authority to do that?
>
> [Conover:]   I, I would, Chris wouldn't steal my identity.
>
> [Court:]       I understand.  We would like, we certainly like to think our, our children wouldn't do that [to] us. But did he have your authority to do this, yes or no?
>
> [Conover:]   I, I, I don't understand what you mean. . . .

[Court:]      Well, here's what I'm, this is my feeling on it. Either you have absolutely no knowledge of this . . . You're completely innocent and if that is the case then somebody in your household has done something wrong and has stolen $1,000.00 from MasterCard or from Capital One, and I'm gonna turn this over to the Police Department, Sheriff's Department and ask them to investigate for a felony fraud or theft . . . . Number two is that you knew this was going on and . . . you just kinda played a part in it and maybe you thought you'd just be able to disclaim it in the end, and so you're somewhat complicit in it. Those, in my mind, are the only two alternatives we have here. Number one is . . . you go free, but maybe some of your family doesn't down the road. Number two is . . . you go free and some of your family goes free, but you owe the debt to the folks over here, Capital One Bank. Do you have a preference, number one or number two?

[Conover:]    I have no knowledge . . . .

[Court:]      Okay. So let me ask you again. If your son had taken your identity and used this was that without your, your permission?

[Conover:]    My, my son wouldn't, wouldn't take my identity.

[Court:]      I'm gonna ask you again. If your son had taken this and used this, your information . . . was that without your permission? That's a yes or no answer, Mr. Conover.

[Conover:]    If he would have taken it I, I would gave [sic] him permission, but I, I know he didn't.

[Court:]      You understand you're under oath?

[Conover:]    Yes, I do.

[Court:]    Okay, and you understand by being under oath that you are, if it turns out that you are basically not telling the truth to the Court, that you could be charged with a "C" felony? Do you understand that?

[Conover:]    Yes.

[Court:]    And a "C" felony is ranged from two years to eight years in prison. Do you understand that?

[Conover:]    Yes.

[Court:]    Okay. So I'm gonna ask you one more time, did you give your son permission to use your identifying information during this period of time, yes or no?

[Conover:]    Yes.

[Court:]    You did. Okay. So, this is your son . . . acting as you, is that what happened here?

[Conover:]    Yeah.

[Court:]    What purpose did you give him your identifying information then to use?

[Conover:]    I, you, you got me kinda confused. I, I never gave anybody permission to, to do anything. But my son would, would have never taken any of my identity.

[Court:]    Well, you don't know that. I mean this could be

pretty easy . . . all the Prosecutor has to do is subpoena these records and they're gonna figure out pretty quickly who ordered these things and where they came to, where they were shipped to . . . . It's gonna be pretty easy to figure that out. So, I'm just trying to save some work at the front end here. . . . Did [your son] have permission to apply for credit in your name?

[Conover:]    No.

[Court:]    Did he have permission to use any of your identifying information to apply for this credit card?

[Conover:]    No.

[Court:]    Anybody else in your household?

[Conover:]    No.

*Id.* at 20-24.

[4]    Ultimately, the small claims court found in favor of Conover but noted it would be referring the matter to the Shelby County Prosecutor's Office:

I certainly do not want to be a party to anybody having to pay debts that they don't owe. . . . But I find it highly suspicious that not only were charges made, but payments were made. . . . Something is fishy here. I was a prosecutor for a long time. This isn't right. This, something's not right here and I'm gonna ask that they get to the bottom and find out.

*Id.* at 25.[1]  The prosecuting attorney referred the case to Detective Dan Crafton of the Shelby County Sheriff's Office.  Detective Crafton obtained records from Capital One for the account ending in 8928, which showed a mixture of online and local transactions.  One of the local transactions was a $27.77 charge on January 3, 2009, which appeared to be paid to Peoples Heating and Cooling ("Peoples") in Shelbyville, Indiana.  Detective Crafton went to Peoples on November 8, 2012, to inquire about the transaction.  He learned Peoples shares a credit card machine with Drake's Electric ("Drake's") and the transaction in question was a payment made to Drake's.  He also learned Drake's retains the receipts for its credit card transactions.

[5]  Drake's provided Detective Crafton with the original receipt for the $27.77 transaction, signed by "Brett Conover."  Transcript at 41-42.  Thereafter, Detective Crafton obtained a verified motion Conover filed in the small claims action, as well as records from the Indiana Bureau of Motor Vehicles ("BMV") containing Conover's signature.  He submitted these documents to the Indiana

---

[1] Rule 1.2 of the Indiana Code of Judicial Conduct provides, "A judge shall act at all times in a manner that promotes public confidence in the independence, integrity, and impartiality of the judiciary, and shall avoid impropriety and the appearance of impropriety."  Similarly, Rule 2.2 requires judges to "perform all duties of judicial office fairly and impartially."  By engaging in an extended cross-examination of Conover, presenting Conover with an ultimatum, threatening prosecution for perjury, referencing his own prior experience as a deputy prosecutor, and then stating he would be referring the matter to the prosecuting attorney, Judge David Riggins crossed the line between neutral magistrate and zealous advocate.  *See Meyers v. State*, 266 Ind. 513, 517, 364 N.E.2d 760, 763 (1977) ("It is the function of the prosecuting attorney, not the court, to investigate crimes and bring criminal charges. The practice of the court threatening a witness with perjury charges during trial poses unnecessary dangers to the integrity of the trial and to public respect for the courts even in non-jury trials . . . .").  Although we do not believe Judge Riggins's remarks during the small claims proceeding constituted fundamental error in the criminal proceeding, we cannot ignore his highly inappropriate behavior.

State Police Laboratory for comparison to the receipt. Based on Conover's known signatures on the motion and BMV records, a forensic document examiner concluded Conover also wrote the signature on the receipt. Capital One did not cooperate in the investigation.

On June 11, 2014, the State charged Conover with perjury, a Class D felony. A bench trial was held on March 15, 2015. The State called the small claims judge, the owner of Drake's, Detective Crafton, and the forensic document examiner. Brent Drake, the owner of Drake's, explained the operation of the credit card machine, stated his company retains all the receipts for credit card transactions, and described the information printed on the receipt signed by Conover:

> [Drake:]  Says Drake's Supply 1310 Jefferson Avenue, Shelbyville Indiana 46176. 317-421-2600. The date is January the 3rd of 2009 at 11:11 a.m. It was a sale, transaction #4, put on a MasterCard ending in 8928. It was swiped, . . . which means it was r[u]n through the machine for $27.77. And then there's a reference number, 000004, authorization code was 078212 and the response from the credit card company was approved. And then we asked for his signature on it.
>
> [State:]  All right. Is there a signature on it as well?
>
> [Drake:]  Yes there is.
>
> [State:]  Okay. And you said the account number ends in 8928, how much of the account number are you able to read?

[Drake:]        That's it, the rest of it's all stars.

Tr. at 41-42. On cross-examination, Drake admitted the receipt did not reveal which bank issued the credit card and further that he had no independent recollection of the transaction. The trial court admitted the receipt over Conover's hearsay objection.

[7]    Detective Crafton testified he contacted Peoples due to the billing records for the Capital One account ending in 8928, which were admitted into evidence during the small claims trial without a business records affidavit or the testimony of a Capital One representative:

> [State:]        [W]hat documents lead you to ask for [the] receipt[?]
>
> [Detective:]  The billing records from the credit card.
>
> [State:]        Okay. The billing records on the account ending in 8928?
>
> [Detective:]  That is correct.
>
> [State:]        And that's billing records that also showed Mr. Conover's name, address and so on?
>
> [Detective:]  Correct.
>
> [State:]        Okay. And, I think you said it was January 3rd, 2009, was that the date on the billing record . . . .
>
> [Detective:]  Correct. A purchase was made there on that date.

[State:] And does the receipt match up with what the billing records had shown?

[Detective:] It did.

\* \* \*

[State:] And that's on the exact account that under the [small claims] transcript . . . the defendant was asked about, have you ever had a card or used a card?

[Detective:] Correct.

[State:] And the documents that you had that led you to go to People's also [had] this same entire account number, is that correct?

[Detective:] I believe so.

*Id.* at 84-85. The billing records Detective Crafton referred to in his testimony were not admitted into evidence during the criminal trial.

The trial court found Conover guilty of perjury and ordered Conover to serve 365 days in the Department of Correction, all suspended to probation, with sixty days on home detention and twenty hours of community service. This appeal followed.

# Discussion and Decision

## I. Admission of Evidence

### A. Standard of Review

Conover contends Detective Crafton's testimony describing the billing records constituted inadmissible hearsay because the statements were not admitted into evidence during the criminal trial. A trial court has broad discretion in ruling on the admissibility of evidence. *Turner v. State*, 953 N.E.2d 1039, 1045 (Ind. 2011). Although we generally review the trial court's rulings for abuse of discretion, *id.*, a defendant's failure to raise a contemporaneous objection at trial waives the issue for appeal, *Delarosa v. State*, 938 N.E.2d 690, 694 (Ind. 2010). Conover concedes he failed to object to Detective Crafton's testimony at trial but argues the admission of his testimony was fundamental error.

A claim waived by a defendant's failure to object can be reviewed on appeal if the reviewing court determines fundamental error occurred. *Id.* "The 'fundamental error' exception is extremely narrow, and applies only when the error constitutes a blatant violation of basic principles, the harm or potential for harm is substantial, and the resulting error denies the defendant fundamental due process." *Mathews v. State*, 849 N.E.2d 578, 587 (Ind. 2006). The exception is "available only in egregious circumstances." *Brown v. State*, 799 N.E.2d 1064, 1068 (Ind. 2003).

## B. Hearsay Testimony

Hearsay is an out-of-court statement offered into evidence to prove the truth of the matter asserted. Evid. R. 801(c). Hearsay is inadmissible unless it falls under a recognized exception. Evid. R. 802. Summarizing the content of an out-of-court statement is "hearsay evidence in its classic form[,]" *Tessely v. State*, 432 N.E.2d 1374, 1376 (Ind. 1982), and permits the admission of evidence that is otherwise inadmissible, *Thornton v. State*, 25 N.E.3d 800, 804 (Ind. Ct. App. 2015). In this case, Detective Crafton testified to the content of credit card statements that were never admitted into evidence, and this testimony was the only evidence in the criminal proceeding linking Conover to a Capital One credit card account ending in 8928. The receipt admitted into evidence listed the last four digits of the account number and showed the credit card was a MasterCard, but it did not show which bank issued the credit card. Because the testimony was clearly hearsay and the prosecution hinged on the State proving Conover had an account with Capital One, or at least used the Capital One card in question, the admission of Detective Crafton's hearsay testimony violated basic principles of due process and constituted fundamental error.

# II. Sufficiency of Evidence

## A. Standard of Review

In reviewing the sufficiency of the evidence to support a conviction, we neither reweigh the evidence nor judge the credibility of witnesses. *Willis v. State*, 27 N.E.3d 1065, 1066 (Ind. 2015). We consider only the evidence supporting the

judgment and any reasonable inferences drawn therefrom. *Id.* We will affirm the conviction "if there is substantial evidence of probative value supporting each element of the crime from which a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt." *Walker v. State*, 998 N.E.2d 724, 726 (Ind. 2013) (citation omitted).

## B. Perjury

A person commits perjury when he or she "makes a false, material statement under oath or affirmation, knowing the statement to be false or not believing it to be true[.]" Ind. Code § 35-44.1-2-1(a)(1) (2012). The statement must be clear and direct, not implied or suggested. *Barker v. State*, 681 N.E.2d 727, 729 (Ind. Ct. App. 1997). The materiality element is satisfied if the statement is "reasonably calculated to mislead an investigation." *Daniels v. State*, 658 N.E.2d 121, 123 (Ind. Ct. App. 1995). Mere confusion or inconsistency is insufficient. *Id.*

In the present case, the State alleged Conover made false, material statements during the small claims trial when he claimed he never had an account with Capital One, never used a Capital One card, and never had any dealings with Capital One. As stated above, it was fundamental error to admit Detective Crafton's testimony summarizing the content of the credit card statements because his testimony was the only evidence in the criminal proceeding linking Conover to the Capital One account ending in 8928. Without evidence showing Capital One issued a MasterCard in Conover's name under an account

number ending in 8928, the State did not prove Conover made false statements with respect to Capital One. The State only proved Conover signed a receipt for a MasterCard transaction with Drake's on January 3, 2009. Accordingly, the error was not harmless, and the evidence is insufficient to prove Conover made a false, material statement under oath. *See Speybroeck v. State*, 875 N.E.2d 813, 822 (Ind. Ct. App. 2007) ("The improper admission of evidence is harmless only when the conviction is supported by substantial independent evidence of guilt that satisfies the reviewing court that there is no substantial likelihood that challenged evidence contributed to the conviction.").

[15] However, "[p]rinciples of double jeopardy generally do not bar a retrial on the same crimes when reversal is required due to trial error in the admission of evidence." *Id.* If all the evidence, even that erroneously admitted, is sufficient to support the trial court's judgment, double jeopardy does not bar retrial on the same charge. *Id.*[2] When we consider all the evidence presented at trial, including Detective Crafton's improperly admitted testimony, we conclude there was sufficient evidence from which the trial court could have found Conover guilty of perjury. We therefore remand for a new trial.

---

[2] On page twenty of his appellant's brief, Conover incorrectly cites *Stahl v. State*, 686 N.E.2d 89 (Ind. 1997), for a contrary proposition. The quotation that appears in his brief is actually language from *Serrano v. State*, 808 N.E.2d 724, 728 (Ind. Ct. App. 2004), an opinion our supreme court specifically disapproved in *Jaramillo v. State*, 823 N.E.2d 1187, 1190 n.5 (Ind. 2005). We remind counsel of her duty of candor toward this court under Indiana Professional Conduct Rule 3.3.

# Conclusion

Because the admission of Detective Crafton's testimony summarizing the content of out-of-court statements constituted fundamental error, the evidence is insufficient to support Conover's conviction for perjury. We therefore reverse but remand for a new trial because we also conclude double jeopardy does not bar retrial on the perjury charge.

Reversed and remanded.

Barnes, J., and Altice, J., concur.