## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

May 22 2018, 9:00 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Daniel J. Vanderpool
Warsaw, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Chandra K. Hein
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

C.V.,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff.*

May 22, 2018

Court of Appeals Case No.
85A02-1712-JV-2826

Appeal from the Wabash Circuit Court

The Honorable Robert R. McCallen III, Judge

Trial Court Cause No.
85C01-1704-JD-11

**Altice, Judge**

# Case Summary

[1] C.V. was adjudicated a delinquent child after the juvenile court found that he committed perjury as a Level 6 felony if committed by an adult, and theft as a Class A misdemeanor if committed by an adult. Following a dispositional hearing, the juvenile court placed C.V. on probation. On appeal, C.V. claims there was insufficient evidence to support his adjudications for perjury and theft.

[2] We affirm.

# Facts & Procedural History

[3] On February 6, 2017, sixteen-year-old C.V. and his friends, Jacob Carles (age nineteen) and Steven Cornett (age eighteen), were at the home of Betty Kroft, in Wabash, Indiana, where Carles had been residing.[1] The three friends left Kroft's home and went to a store, a fast food restaurant, and C.V.'s house so that he could pick up some clothes, as C.V. planned to spend the night at Kroft's. The three then returned to Kroft's. Later that night, Cornett drove C.V. to a location and dropped him off so he could meet with another friend. Cornett returned to Kroft's home and "hung out for a little bit" and then left. *Transcript Vol. 2* at 7. After Cornett left, Carles went to bed. At some point, C.V. returned to Kroft's home.

---

[1] Betty Kroft was the mother of Jacob Carles's girlfriend.

[4]     Mona Corbran worked at Anna House where she took care of special needs patients. Anna House was located approximately one block from Kroft's home. Corbran typically worked at Anna House overnight. On the night of February 6, 2017, Corbran arrived at work and parked her car at the front door. The next day, on February 7, 2017, around 10:00 a.m., Corbran went out to her car and noticed that items had been moved and that her passenger door was open. It had rained the night before, and the inside of her car was wet. Corbran looked inside her glove compartment for her wallet and iPad but both were missing. She called the police and reported the items as stolen.

[5]     Later that afternoon, Corbran noticed that her cell phone, which was programmed to automatically sync to her iPad, was reporting that her iPad was at Kroft's home. Corbran went to Kroft's house and knocked on the door. Carles answered, and Corbran told him what had happened. Carles apologized about her missing items and said, "[B]ut we don't have it." *Id*. at 13. Corbran again called the police.

[6]     Carles went inside and told C.V. what was happening. Carles testified that C.V. "freaked out and he told [Carles] that he had an iPad and a purse that he had taken." *Id*. at 30. Carles further testified that C.V. placed the iPad and wallet behind a washing machine. Zachary Campbell, Kroft's son who, at the time of the incident, resided with Kroft, testified that when C.V. learned that Corbran was at the door, he "seemed panicked" and "immediately left without saying a word." *Id*. at 25.

[7] The police arrived at Kroft's home and spoke with Carles and with Kroft, who had just arrived. With Kroft's permission, the officers searched the home while Corbran waited outside. The police found Corbran's iPad and wallet behind a clothes dryer.

[8] C.V. later spoke with the police about the incident and provided the following statement under oath:

> I got to Jacob's at 8:00-8:05, we sat at his house for maybe an hour. His friend Steven showed up around 9:30ish and all THREE [sic] of us left to Wal-Mart [sic], and Jacob and Steven bought three gold-fish [sic]. After they purchased the gold-fish [sic] we went to Mcdonalds [sic] and Steven bought fries and I bought a pop. We had left Mcdonalds [sic] at 10:30ish, and went back to Jacob's and sat in his basement and talked and played cards. Steven left around 12:00 because he said he has school. After Steven left Jacob went to buy some weed, and he was gone 5-7 minutes, he came back [sic] told me to "Roll one up," so I did and then we smoked and played cards until we got tired. When we woke up the next day at 1:45, Jacob told me there was a lady outside wanting her ipad [sic]. He told me to take the ipad [sic] and go through his basement window. I didn't take it, I walked out the back door, and talked to the lady who said her ipad [sic] was at the house, and she gave me her number and said to call if we knew anything, then she called the cops and they told her to wait in her vehicle and when she walked over to her vehicle, I left.

*Exhibit Book Vol. 1* at 4-5. Corbran testified that she never spoke with C.V., only with Carles.

[9] On April 18, 2017, the juvenile court authorized the filing of a delinquency petition, alleging that C.V. committed perjury as a Level 6 felony if committed by an adult, and theft as a Class A misdemeanor if committed by an adult. On September 18, 2017, the court held a factfinding hearing and, on the following day, entered a true finding on all allegations.

[10] On October 23, 2017, the court held a dispositional hearing. The court entered a dispositional order that same day; however, the order did not contain a finding regarding the disposition. C.V. filed a motion to correct error, and, on November 27, 2017, the juvenile court entered an amended dispositional order placing C.V. on probation until he turned eighteen. C.V. now appeals.

## Discussion & Decision

[11] C.V. argues that the evidence was insufficient to support his adjudication as a delinquent for committing perjury and theft.

> When the State seeks to have a juvenile adjudicated as a delinquent child for committing an act which would be a crime if [ ] committed by an adult, the State must prove every element of the crime beyond a reasonable doubt. In reviewing a juvenile adjudication, this court will consider only the evidence and reasonable inferences supporting the judgment and will neither reweigh evidence nor judge the credibility of the witnesses. If there is substantial evidence of probative value from which a reasonable trier of fact could conclude that the juvenile was guilty beyond a reasonable doubt, we will affirm the adjudication.

*E.D. v. State*, 905 N.E.2d 505, 506-07 (Ind. Ct. App. 2009) (internal citations omitted). "Circumstantial evidence is no different than other evidence for this

purpose, and standing alone may sufficiently support a conviction." *R.L.H. v. State*, 738 N.E.2d 312, 315 (Ind. Ct. App. 2000).

## 1. Perjury

C.V. first claims there was insufficient evidence to support his adjudication for perjury. A person commits perjury when he "makes a false, material statement under oath or affirmation, knowing the statement to be false or not believing it to be true[.]" Ind. Code § 35-44.1-2-1(a)(1). The statement must be clear and direct, not implied or suggested. *Barker v. State*, 681 N.E.2d 727, 729 (Ind. Ct. App. 1997).

The State alleged that while under oath, C.V. made a false, material statement when he told the police "he left Jacob Carles's house and talked to Mona Corbran who had said that her ipad [sic] had been stolen." *Appellant's Appendix Vol. II* at 29. C.V. maintains that the State failed to prove his statement was material.[2] The materiality element is satisfied if the statement is "reasonably calculated to mislead an investigation." *Daniels v. State*, 658 N.E.2d 121, 123 (Ind. Ct. App. 1995). The State, however, is not required to prove actual impairment of the investigation. *Wilke v. State*, 496 N.E.2d 616, 618 (Ind. Ct. App. 1986).

---

[2] C.V. does not challenge the other elements of perjury.

[14] We find that the State presented sufficient evidence to prove C.V.'s false statement to police was material. Wabash Police Officer Ron Miller testified that during his investigation of the theft, he advised C.V. of his *Miranda* rights and spoke to C.V. about the incident. After consulting with his grandfather, C.V. waived his rights and, while under oath, made the false statement to the police. The crux of C.V.'s statement was to portray himself as a helpful, cooperative person and to attempt to deflect blame. C.V. "stuck to" his false statement and, at his hearing, testified that when Corbran arrived at Kroft's house, he "went and talked to [Corbran]. She gave me her phone number, and then I said if I hear anything, I'll call you." *Transcript* at 48.

[15] A reasonable factfinder could determine from this evidence that C.V.'s false statement interfered with the police officers' investigation and, potentially, misled the officers. As such, his false statement was material, and sufficient evidence was presented to support C.V.'s adjudication for perjury.

## 2. Theft

[16] C.V. next challenges the sufficiency of the evidence to support his adjudication for theft. To support an adjudication for theft, the State was required to prove beyond a reasonable doubt that C.V. knowingly or intentionally exerted unauthorized control over property of Corbran, with intent to deprive her of its value or use. *See* Ind. Code § 35-43-4-2. A theft conviction may be sustained by circumstantial evidence. *Bennett v. State*, 871 N.E.2d 316, 323 (Ind. Ct. App. 2007), *opinion adopted by Bennett v. State*, 878 N.E.2d 836 (Ind. 2008).

[17] C.V. claims his adjudication was unsupported by sufficient evidence because his "finding of delinquency could only have been based upon the testimony of Jacob Carles, as he was the only witness who claimed to have knowledge that it was C.V. who stole [Corbran's iPad] and wallet," and Carles's testimony was incredibly dubious. *Appellant's Brief* at 15. Per C.V., we should apply the incredible dubiosity rule because Carles's testimony was "'inherently contradictory' and at the least 'equivocal,'" as Carles changed his testimony at the factfinding hearing. *Id.* During direct examination, Carles testified that C.V. told him that he had taken "an iPad and a purse." *Transcript* at 30. When cross-examined, Carles testified that C.V. "never said he had the iPad in those exact words." *Id.* at 38.

[18] The "incredible dubiosity" rule allows us, in rare circumstances, to impinge upon a trier of fact's function to judge the credibility of a witness. *Hardley v. State*, 893 N.E.2d 1140, 1143 (Ind. Ct. App. 2008) (citing *Love v. State*, 761 N.E.2d 806, 810 (Ind. 2002)). Our supreme court stated the rule as follows:

> If a sole witness presents inherently improbable testimony and there is a complete lack of circumstantial evidence, a defendant's conviction may be reversed. This is appropriate only where the court has confronted inherently improbable testimony or coerced, equivocal, wholly uncorroborated testimony of incredible dubiosity. Application of this rule is rare and the standard to be applied is whether the testimony is so incredibly dubious or inherently improbable that no reasonable person could believe it.

*Love*, 761 N.E.2d at 810 (citations omitted).

[19] Carles was not the only witness to testify to C.V.'s alleged theft of the iPad and wallet. Corbran testified that sometime during the night in question, her iPad and wallet were taken from her car that was parked approximately one block from the house where C.V. was staying. Cornett testified that, on that night, he and C.V. left Kroft's house and Cornett dropped C.V. off so that C.V. could meet with a friend. Campbell testified that, at some point, C.V. returned to Kroft's house and was at Kroft's house the day Corbran arrived. He further testified that when C.V. learned that Corbran was at the door, C.V. panicked and left the house immediately. As more than one witness testified at C.V.'s hearing, the incredible dubiosity rule is inapplicable. *See Moore v. State*, 27 N.E.3d 749, 758 (Ind. 2015) (testimony of multiple witnesses alone precludes application of incredible dubiosity rule); *Cox v. State*, 780 N.E.2d 1150, 1154 (Ind. Ct. App. 2002) (declining to address incredible dubiosity claim because more than one witness testified to events surrounding the crime); *see also Kilpatrick v. State*, 746 N.E.2d 52, 61 (Ind. 2001) ("It is for the trier of fact to resolve conflicts in the evidence and to decide which witnesses to believe or disbelieve.").

[20] Judgment affirmed.

Najam, J. and Robb, J., concur.